IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT, SEPTEMBER TERM 1839.—CONTINUED.

## Selden *against* Williams.

A deed is not always a merger of the articles of agreement for the sale of lands; in many cases it is to be considered a part performance only.

Parol evidence of the understanding of the parties in relation to the construction of a written agreement, may be given to explain that which is otherwise ambiguous.

ERROR to the common pleas of *Erie* county.

James and John Williams against George Selden. This was an action on the case for a nuisance, in obstructing a fifteen feet passage, on the north side of the plaintiffs' lot, purchased by them from Judah Colt, and to which they claimed a right in common with the defendant.

The plaintiffs gave in evidence the article of agreement between them and Judah Colt, dated April 2, 1832, the material parts of which are as follow: The said J. Colt, for the consideration, &c., doth hereby covenant, &c., that he shall and will, on or before April 1, 1835, by such deed or deeds of conveyance as the said J. and J. Williams, their heirs, or assigns, or his or their counsel learned in the law shall advise, well and sufficiently grant, convey, and assure to the said J. and J. Williams, to their heirs and assigns,

IX.—B

[Selden v. Williams.]

in fee-simple, clear of all incumbrances, all that piece and parcel of ground, being and situate on the east side of French street, being part of lot No. 2597, beginning 15 feet from the southwest corner of said J. Colt's brick store; thence by the residue of the lot north, 63 degrees east, 82½ feet, to the west line of lot No. 2595; thence by the same south, 27 degrees east, 39 feet to a post; thence by the residue of the lot south, 63 degrees west, 82½ feet to French street; thence by the same to the beginning. * * * * It is further understood between the parties, that the said Williams have the privilege to extend their building over the spaceway between the land above described, and the north line of lot No. 2593, now owned by James Duncan, on the express condition that the building thus extended over the spaceway is not to be less than 10 feet 9 inches in height, from the surface of the ground; and when said Williams commence building on the premises, it is contemplated by the said Judah to build over the spaceway adjoining his brick building, and to avail himself of the privilege of the north wall of said J. and J. Williams, by allowing them a reasonable consideration for a proportionable part of the expenses of the partition wall; it being expressly understood between the parties, that the buildings then to be erected on the premises are to be brick.

Deed dated August 30, 1836, from J. Colt's executor to plaintiffs, for part of lot 2594, viz., 39 feet, fronting on French street.

A paper, of which the following is a copy, with diagram, in Mr Colt's handwriting:

16th January 1832.—Mr Colt will sell Messrs J. and J. Williams 38 feet front on French street, by 82½ feet in rear, for the sum of four hundred dollars, payable as follows: One hundred dollars on the 1st of April next, and the residue of the purchase-money in three equal annual instalments, from the said first day of April, with the lawful interest paid annually, from the said first day of April 1832; *and agreeably to the plan annexed,* the 12 feet on the south side of the lot to be kept open for the use of the said Judah and the said Williams. Mr Colt reserves to himself the privilege of building over the 15 feet spaceway, between his brick building, and 38 feet abovementioned, whenever the said Williams shall erect a building on the front of his lot, by allowing him a proportionable part of the expense of the partition wall between the two buildings. Mr Colt also reserves to himself the privilege of removing the bank of earth on the rear of Mr Williams's shop.

[Selden v. Williams.]

Lot No. 2595.

Note.—The plat in the margin of the agreement is the same as the present, except that it has the No. of the lot and the one east, and J. and J. W.'s name, which, to designate here, are marked with blue ink.

Monday, 16th January, 1832.

N. B.—Mr Colt's object in offering this section of the lot to the Messrs Williams, is, that when they build on the premises, they will erect brick buildings.

Plaintiffs offer to prove that Mr Colt told witness, Howel, the reason he did not build down to the ground was, that he had entered into a contract with Williams, that precluded him from so building, to which defendant objected; but the evidence was received, and a bill of exception sealed.

C. G. Howel sworn, says, when Mr Colt was commencing his brick building, 1830, he said that spaceway was to be left open: about the time Mr C. was to build his brick building, he asked me for a plan, and said he would get Mr Williams to build, and he would leave the spaceway open. The plan of building was dropped. He said Williams did not feel able to build at that time. He did not name Williams, but said that 15 feet spaceway was to be left open to accommodate both sides of the lot on the south and north. He left a similar spaceway to accommodate the central buildings.

[Selden v. Williams.]

Cross-examined.—These were his words as near as I can recollect; thinks this was in 1830; am sure it was just before Mr Colt built the brick buildings.    Never heard Mr C. say any thing after that.

Anson Jewell offered as a witness, to prove conversation had with Mr C. in relation to the spaceway, objected to, but admitted and exception by defendant.

There was much other parol evidence of the same kind given.

The jury, under the direction of the court, found a verdict for the plaintiff.

*Derrickson*, for plaintiff in error.
*Walker* and *Galbreath*, contra.

The opinion of the court was delivered by

SERGEANT, J.—This is a case of some difficulty, arising from the ambiguity in the contract of the parties, as to the right of the plaintiffs below, in the spaceway of fifteen feet, north of the lot for which the deed was made.    The written instruments, consisting of the proposition of the 16th of January 1832, by the testator to the plaintiffs, the contract of the 2d of April 1832, between the parties, and the deed made by the defendants to the plaintiffs, on the 30th of August 1836, are none of them, by themselves, entirely plain on this point.    The deed made after the decease of Mr Colt, may be laid out of the question, for it is agreed that it merely conveyed the lot, without any reference to the spaceway.    It is not necessary, however, in order to give the plaintiffs a right in the spaceway, that it should have been conveyed by the deed transferring the lot.    Being merely an easement, or incorporeal right in the land of another, if the written contract of the grantor bound him to leave the spaceway open for the use of the buildings, it is sufficient; and it would be a fraud afterwards to attempt to withhold it from the plaintiffs. The deed is in many cases to be considered, not as a merger of the contract, but as a part performance of it.    The contract remains binding as to the further stipulations contained in it, conferring valuable rights on the plaintiffs, and forming part of the consideration on which they contracted to pay the purchase-money, and accept the deed.

The case depends, in my opinion, on the construction of the contract made between the parties on the 2d of April 1832, by which previous negotiations were consummated, and the terms of sale were fixed.    The proposal of the 16th of January 1832, may be referred to, as well as the parol evidence, to explain such ambiguities as exist in the contract, but not to vary its essential parts. The proposal could not have the effect to alter the subsequent contract, were its terms even free from doubt, because it was long previous to the contract; it varies from it in the extent of ground to be granted, and in other particulars; it was a mere overture which

the plaintiffs were free to accept, reject, or change, and which, where it clearly differs from the contract, must be considered as intended to be changed by that instrument.

To the proposal of the 16th of January 1832, from Mr Colt to the plaintiffs, is annexed a plan of the lot to be sold of 38 feet by 82½, and of the adjacent property, which expressly lays down the two spaceways—one of 15 feet on the north side of the lot, and another of 12 feet on the south side; and Mr Colt thereby offers to sell the lot "*agreeably to the plan annexed*." It then goes on as follows: " The 12 feet on the south side of the lot to be kept open for the use of the said Judah, and the said Williams.　Mr Colt *reserves to himself the privilege of building over the fifteen feet spaceway*, between his brick building, and thirty-eight feet abovementioned, whenever the said Williams shall erect a building in the front of his lot, by allowing him a proportionable part of the expense of the partition wall between the new buildings. Mr C. also reserves to himself the privilege of removing the bank of earth on the rear of the building.　N. B.—Mr Colt's object in offering the section of the lot to the Messrs Williams, is, that when they build on the premises, they will erect brick buildings."

If one person proposes to sell to another a lot, carved out of a larger lot belonging to the vendor, agreeably to the specific plan, which plan lays out spaceways or passages over the proprietor's ground adjacent to the lot, contemplating, at the same time, that the vendee will erect brick buildings, to which such spaceways and passages are immediately necessary or useful, it seems to me, it must be considered as intending the grant of the right to the vendee to use those spaceways in common with the proprietor of the adjacent lot.　And the reservation by Mr Colt, of the privilege of building over the fifteen feet spaceway into the plaintiff's wall, leads irresistibly to the conclusion, that he intended such right to pass by the contemplated grant: since, if he did not, it was unnecessary to say any thing about the privilege of building over.

But when we proceed further to examine the contract, we find the arrangement modified in various particulars.　In the first place, the lot, instead of thirty-eight feet, is to be thirty-nine feet; and in respect to the two spaceways, it is remarkable that they are neither of them expressly contracted to be granted to the plaintiffs, but are placed, in that respect, on the same footing.　That is, the right to them is left to be inferred so irresistibly, by the terms and provisions employed in respect to them, that no one can doubt they were equally in contemplation of the parties as a matter understood and agreed upon, and as comprising part of the settled plan of building between them. " It is further understood between the parties, that the said Williams have the privilege to extend their building over the spaceway, between the land above described and the north line of lot No. 2593, now owned by James Duncan, on the express condition, that the building thus extended over the

IX.—B*

spaceway is not to be less than ten feet nine inches in height from the surface of the ground." This relates to the twelve feet spaceway, and to the right of plaintiffs to build over it, and contains no express agreement to grant the spaceway, though it is clear beyond doubt it was intended. Then as to the fifteen feet spaceway in question, the language is similar in speaking of the right of the testator to build over, with the additional right to the party wall. "And when the said Williams commence building on the premises, it is contemplated by the said Judah to build over the spaceway adjoining his brick building, and to avail himself of the privilege of the north wall of said J. and J. Williams, by allowing them a reasonable consideration for a proportionable part of the expenses of the partition wall—it being expressly understood between the parties that the buildings then to be erected on the premises are to be brick." Thus in all that is contained in this contract, relating to the two spaceways, the rights of the plaintiffs are left on the same footing, neither is stipulated for expressly, but both are treated as matters already understood, fixed and settled by the plan, previously made and sent to the plaintiffs, according to which the buildings were to be erected. And what weighs with me strongly is, that if, by this contract, the right to the fifteen feet spaceway is not secured to the plaintiffs, then neither is the twelve feet spaceway secured by it; which is more than either party, I I believe, has ever contended for. It appears to me, both were designed to pass, subject to the rights and privileges mentioned in the contract.

The parol evidence, which went to explain the ambiguities in the contract, by showing that it was the uniform understanding of Mr Colt, as well in 1830 before the contract, as in the fall of 1832 subsequent to it, that the spaceway in question was to be left open to accommodate both buildings, in conformity with his general plan, was properly received in evidence, and satisfactorily shows his understanding of the matter during his lifetime.

Judgment affirmed.