### BELL's Administratrix *v.* GOLDING.

FURNITURE.—CONSTRUCTION OF WRITTEN CONTRACT.—EVIDENCE.—A sold to B, by a written contract, the lease of a hotel, and "all the furniture in the hotel, used in running the same." It was further stipulated that the sale did not include "the private furniture of A, in his family rooms, nor the furniture in boxes which have not been unpacked, nor stores and supplies on hand," &c.

*Held,* that the word "furniture," as used in the contract, meant that with which the house was furnished or supplied; goods, vessels, utensils and

other appendages, necessary or convenient for carrying on the house; whatever had been added to the interior of the house for use or convenience.

*Held,* also, that parol evidence was admissible to show what articles were required for use and convenience in the management of the hotel.

*Held,* also, that every material fact which would aid the court in applying the contract, and in identifying the property which was the subject of it, and which would tend to place the court in the situation of the parties, was admissible in evidence.

*Held,* also, that evidence of the acts of the parties in reference to the fulfillment of the contract, after it was made, was admissible to show their intention and understanding in the use of the language employed in the contract.

*Held,* also, that the contract of sale, construed in connection with the circumstances of the parties, and their conduct after the making of the contract, must be held to include all articles of furniture purchased for the hotel, whether fully prepared at the time for present use, or placed in the store room to be afterwards prepared and used in operating the hotel; such as linen, toweling, carpets, &c., in the piece.

SPECIAL FINDING.—When the court below has found the facts specially, the Supreme Court may, in reversing the judgment, if justice does not require a new trial, direct a proper judgment to be entered below.

APPEAL from the *Marion* Common Pleas.

RAY, C. J.—At the *February* term, 1866, of the Court of Common Pleas of *Marion* county, *Charles N. Golding* and *Jeptha L. Holton,* for the use of said *Golding,* filed their complaint against the appellant.

The complaint avers that the appellant is the administratrix of *Robert A. Bell,* deceased; that she was duly appointed as such by the proper court of *Jefferson* county, *Kentucky;* that the decedent left, at the time of his death, a large amount of personal property, exceeding in value $15,000, in *Marion* county, *Indiana,* which appellant has taken into her possession and control, thereby becoming responsible as administratrix *de son tort;* that the plaintiffs, *Golding* and *Holton,* were partners, in the year 1864, in keeping the hotel known as the *Bates House,* in *Indianapolis;* that on the 29th of *November,* they sold the business of the hotel, with the unexpired lease, and the furniture used in running the same, and the fixtures belonging to the

same, with the stores and provisions on hand, to the decedent, whereby decedent became indebted to plaintiffs in the sum of $3,109 10. A bill of particulars was filed with the complaint. That by the sale of the subject matter of their partnership, the partnership between the plaintiffs was dissolved, and, on settlement between the partners, the account against *Bell* was set over to the plaintiff, *Golding*, and accepted by him as money, to make up his share of the firm assets, and that *Holton* assigned to *Golding* all his interest in the account. The assignment was in writing, and a copy of it was filed with the complaint. Judgment was demanded in favor of *Golding* for $4,000.

An affidavit and bond in attachment were filed, which appear in the record. A writ of attachment was issued and levied on some personal property.

At the *May* term, 1865, *J. L. Ketcham,* Esq., appeared for *Holton,* and moved to have his name stricken from the record as a plaintiff. Upon this motion an affidavit and a counter affidavit were presented. The motion was sustained, and *Holton's* name stricken out.

The defendant then filed her answer in five paragraphs:

1. A general denial. 2. Payment. 3. That prior to *November* 29, 1864, *Jeptha L. Holton* was the proprietor of the hotel known as the *Bates House;* that he was in the exclusive possession of the hotel and appurtenances, claiming and exercising an exclusive ownership, and that the decedent, *R. A. Bell,* had no knowledge whatever that any other person had, or claimed to have, any interest in the hotel; that on the 29th of *November,* 1864, the decedent purchased of *Holton* the lease under which he held the hotel, all the furniture in the hotel, used in running the same, and all the fixtures connected therewith, for the price of $50,000, to be paid as provided in a written contract between the parties, filed with the answer; that this sum was paid, according to the contract; that at the same time, and as part of the same transaction, *Bell* purchased of *Holton* the

stores and supplies on hand; that the price of the stores and supplies was not directly ascertained by the contract, but it was provided that in case the parties could not thereafter agree upon the price, the same should be fixed by third persons, to be mutually chosen, and that the price thus ascertained should be paid by *Bell* to *Holton;* that the parties failing to agree, *A. W. Bugbee* was mutually chosen by them to value the stores and supplies; that *Bugbee* assumed the duty, and determined the fair price and value of the stores and supplies to be $2,706 48, which was, in fact, their fair price; that the stock of stores and supplies thus valued by *Bugbee,* and the goods mentioned in the complaint and the annexed account are the same; that *Holton* did not comply with his contract to deliver to *Bell,* on the 1st of *December,* 1864, said furniture and fixtures, but, on the contrary, removed from the house and appropriated a large portion thereof, amounting in value to $2,804 88, a bill of items of which was made part of the answer; that neither *Bell,* in his lifetime, nor his personal representatives since his death, have received payment for the property so removed.   Offer to set-off a sufficient amount against plaintiff's claim.

4.   The fourth paragraph is the same as the third, with this exception, that instead of stating that the partnership of *Golding* with *Holton* was a silent one, and unknown to *Bell,* it states that those persons were partners under the firm name of *J. L. Holton,* and that the sale of the hotel, &c., was made by them, and the contract broken by them. Same offer of set-off.

5.   The fifth paragraph is similar to the third, with this exception: It admits that *Holton* delivered the property to *Bell,* on the 1st day of *December,* according to contract, but states that immediately afterward he removed from the hotel, and converted to his own use, a large portion of the property, amounting in value to $2,804 88, as per bill of particulars filed, whereby he became indebted in that sum to *Bell,* and that this indebtedness arose prior to the as-

signment of the claim in suit, by *Holton* to *Golding.* Same offer of set-off.

The written contract of sale referred to in the answer, and filed therewith, is as follows:

"This memorandum of agreement, made this 29th day of *November*, A. D. 1864, between *Jeptha L. Holton* of the first part, and *Robert A. Bell* of the second part, witnesseth: that the said party of the first part hath this day sold to the said party of the second part, his lease of the *Bates House, Indianapolis*, of the date of the 14th of *April*, 1859, originally made to *William Judson*, and afterwards assigned to said party of the first part, and also all the furniture in the *Bates House*, used in running the same, and also all the fixtures owned by said *Holton*, for the price and sum of fifty thousand dollars, of which the sum of twenty thousand dollars is to be paid in hand; the balance, thirty thousand dollars, to be paid on or before the 5th of *January*, 1865, to be secured by a note without relief from valuation or appraisement laws, and by a mortgage on the personal property sold, and the assignment of the lease as security, or the same may be included in the mortgage. Said sale and price do not, however, cover or include any of said *Holton's* private furniture or property which is in his family rooms, Nos. 138 and 139, which is not sold at all, nor the furniture in boxes which have never been unpacked, nor a certain table and eight chairs, excepted by the parties; nor do said sale and price of $50,000 include or cover the stores and supplies on hand, nor the omnibus, nor horses, wagon and harness, &c.

"But the said party of the first part hath also sold to the said party of the second part, all of said stores and supplies, also the omnibus, horses, wagon, harness, &c., at a fair price, to be agreed upon by the parties, if they can so agree, but if they cannot so agree, then the price of said stores and supplies, omnibus, horses, wagon, harness, &c., to be determined and fixed by parties mutually chosen by said

parties of the first and second parts, and the price so agreed upon, or so fixed, to be paid in hand, when so ascertained; and the possession of said premises to be delivered and received on the 1st day of *December*, 1864. The said party of the first part also sells and assigns to said party of the second part, his agreement with *H. Bates*, of the 25th of *April*, 1863, for the renewal of the lease of said house, and all his interest therein, the sale thereof being included in and covered by the above named sum of $50,000. It is further understood and agreed, that to secure the deferred payment of $30,000, said *Holton* shall retain and hold the two policies of insurance, amounting to $20,000, and that said party of the second part will renew the policy for $10,000, expiring to-morrow, and assign the same to said party of the first part, as collateral security on said note for $30,000.

(Signed,)                    "J. L. HOLTON,

                                  "R. A. BELL."

The plaintiff, *Golding*, replied in two paragraphs. The first was the general denial; the second was a special reply. A demurrer was sustained to the second paragraph of the reply, but no objection is presented to this ruling. The cause was submitted to the court for trial, and the following special finding was had:

"Come the parties by their attorneys, and the court, being fully advised in the premises, finds that the words used in the memorandum of agreement filed with the answer of the defendant, "all the furniture in the *Bates House*, used in running the same," are not to be taken in the restricted sense of actual use, but must be construed to mean all the furniture provided and placed in the house ready for immediate use, as occasion or the wants of the house may require, but that said words do not cover articles provided to be manufactured into furniture, as occasion or the wants of the house might require; and the court further finds that there should be deducted from the bill of particulars of the plaintiff, the following items and amounts: For matches,

$216; fruit, $100; pickles, $42; gas burners, $10 80; brackets, $8 13; hall dusters, $3; coal scuttles, $5; washboard, 42 cts.; buckets, $2 17; and box of glass, $7 50; making a total to be deducted of $395 02; leaving the amount which the plaintiff is entitled to recover $2,714 08.

"Following the rule laid down as to the bill of items of the defendant, there must be deducted from it:

| | | | | |
|---|---|---|---|---:|
| 5 | Bolts | of | Sheeting | $290 00 |
| 2 | " | " | Pillow Case cotton. | 63 48 |
| 2 | " | " | White Crash | 8 40 |
| 1 | " | " | Silk and Wool damask.. | 270 00 |
| 1 | " | " | Cotton and Wool damask | 49 50 |
| 2 | " | " | Brussels Carpet | 180 00 |
| 1 | " | " | Hall Carpet | 31 25 |
| 1 | " | " | White Table linen | 70 00 |
| 1 | " | " | Brown Table linen | 56 00 |
| 5 | Dozen Goblets, packed in box. | | | 22 50 |
| 1 | Bolt Buff Damask | | | 36 00 |
| 1 | " Brown Crash. | | | 10 00 |
| 1 | Box Bar Tumblers | | | 18 00 |

$1,105 13

"Which leaves a balance which the defendant is entitled to have set-off against the claim of the plaintiff of $1,699 75. The court therefore finds that there is due to the plaintiff the sum of $1,014 33.

"The court further finds, that at the time of the making of the contract, the decedent, *Bell*, did not know that *Golding* was a partner of *Holton*."

The word "furniture" includes that which furnishes, or with which anything is furnished or supplied. Whatever must be supplied to a house, a room, or the like, to make it habitable, convenient or agreeable. Goods, vessels, utensils and other appendages, necessary or convenient for housekeeping. Whatever is added to the interior of a house or apartment for use or convenience.

It was proper that parol evidence should be given to

inform the court what articles were required for use and convenience in the management of the hotel in question. So also, in the language of Baron PARKE, in his answers to the questions submitted by the House of Lords, on the appeal in the case of Lady *Hewley's* charities, "For the purpose of applying the instrument to the facts, and determining what passes by it, and who take an interest under it, a second description of evidence is admissible, namely, every material fact that will enable the court to identify the person or thing mentioned in the instrument, and to place the court, whose province it is to declare the meaning of the words of the instrument, as near as may be in the situation of the parties to it."

Evidence of the mutual acts of the parties in reference to the fulfillment of the contract, after it was entered into, was properly admitted to show what their intention and understanding was in the use of language, which in its application to the subject matter of the contract became somewhat obscure. *Crabb* v. *Atwood et al.*, 10 Ind. 322; *Selden* v. *Williams*, 9 Watts 9.

In the case of *Gray et al.* v. *Harper et al.*, 1 Story 374, where the contract was to purchase certain books at cost, Justice STORY used this language: "I do not think that it is absolutely incompetent for the parties to show from the conversations between them at the time of making the contract what was the sense in which they then understood the word 'cost,' as used in the contract, as it is a word capable of a larger or a narrower construction, according to the subject matter, and the circumstances of the particular case. Those conversations may be deemed a part of the *res gesta*, and thus may be referred to as explanatory of the real intention of the parties in the use of the word." It was held in *Towler* v. *The Ætna Insurance Co.*, 7 Wend. 270, "that it was undoubtedly competent for the plaintiff to show that the words, 'a frame house, filled in with brick,' had, by the custom or usage of insurers and insured, a particular technical meaning, different from that which the

words might generally be understood to import. They are not definite and unequivocal in themselves. They may apply to the partitions as well as to the external frame of the house."

On the trial, Mr. *Murdock,* a witness for the appellant, testified that he did not examine the rooms up-stairs, but at the time of the sale, *Holton* stated that there was enough property, sheeting, blankets, &c., to run the house a year; that we would need to buy nothing for a year, with what was on hand, and the materials on hand. The only things reserved in the contract as "furniture in boxes that had never been unpacked," were two boxes of mirrors that were down stairs in the saloon. *Holton* said they were articles bought by his wife, not for the hotel.

Mr. *Bugbee,* another witness for the appellant, stated that he came to *Indianapolis* on the 1st of *November,* and also on the 1st of *December,* 1864. He came the first time as the agent of parties who proposed to purchase the *Bates House.* He examined the store rooms with Mr. *Holton.* He found there five bolts of sheeting, three bolts of pillow casing, two bolts of white linen for table cloths, one bolt of brown damask linen for same purpose, three pieces or rolls of Brussels carpeting, one whole piece of satin damask for curtains, one piece of buff for same, and various other articles. *Holton* pointed out everything in the store-rooms, except the groceries, liquors and cigars, as belonging to and going with the hotel. Witness saw all the articles mentioned on the list filed with the answer, and none of them belonged to or were in rooms Nos. 138 and 139. On the 3d day of *December, Holton* said to witness, "*Bugbee,* there are some things I did not deliver to *Bell,* and want to deliver them to you." He took witness into his parlor and said, "*Bugbee,* I have sold everything in the *Bates House* to *Bell,* except a *tete'a'tete,* a sofa, a table, the mattresses on my beds, eight chairs in the upholstery room, and two boxes containing my family wardrobe, together with some cloth-

ing that belongs to my mother." *Holton* then delivered a box of silver still in the original packages, having never been used.

We do not deem it necessary to recite more of the evidence. It all demonstrates, we think, that the intention of the parties was to include in the contract of sale, and as part of the consideration for the price of $50,000, all the articles of furniture purchased for the hotel, whether they were fully prepared for present use, or purchased and placed in the store room to be so prepared and used in operating the hotel. Nor is this evidence of the intention and understanding of the parties at all questioned by the fact that *Holton* subsequently removed a portion of the articles which had been purchased, but not prepared, for the use of the hotel. He did not attempt to remove all the articles of this class. In his removal of such as he took away, his conduct indicated that he regarded himself as perpetrating a fraud upon the rights of *Bell.* He attempted to remove the only witnesses to his fraud, by inducing the housekeeper, and the woman in charge of the linen room, under false pretenses, to leave the house and enter his service. He removed not only articles purchased but not prepared for use, but articles in daily use in conducting the hotel, and marked with the name of the hotel. And this proof of the plain understanding of the parties as to the meaning and application of the words, "all the furniture in the *Bates House,* used in running the same," is not inconsistent with the construction which the contract will support upon its face. The property was all purchased for, taken into, and appropriated to the use of the hotel. It is ably, and we think correctly, urged by the appellant, that the written contract, taking the whole of it together, shows that the sale of "all the furniture in the *Bates House,* used in running the same," was not intended by the parties to be understood in the limited interpretation given to it by the court below.

By the contract, *Holton* sold, first, the lease of the hotel;

second, "all the furniture in the *Bates House,* used in running the same;" third, all the fixtures owned by him, for the price of $50,000. But in a subsequent part of the instrument these exceptions are made: "Said sale and price do not, however, cover or include any of said *Holton's* private property or furniture in his family rooms, Nos. 138, 139, which is not sold at all; nor the furniture in boxes which have never been unpacked; nor a certain table and eight chairs, excepted by the parties; nor do said sale and price of $50,000 include or cover the stores or supplies on hand, nor the omnibus, nor horses and wagon, and harness," &c. As there could be no pretense that the property covered by these exceptions would or could have passed under the sale of the lease, or the sale of the fixtures, they must be taken as referring especially to the sale of the furniture. Now if the intention was to sell only the furniture actually "used in running" the hotel, in the sense claimed by the plaintiff, can any possible reason be assigned why they should except from the operation of that sale, *Holton's* private furniture, in his private family use? Or why they should except the furniture in boxes that had never been unpacked? They thought it necessary even to except from the operation of this contract the stores and supplies, and the omnibus, horses, wagon, harness, &c. It would have been unnecessary and idle to make these exceptions, unless, in the opinion of the parties, the terms of sale used might be sufficiently comprehensive to embrace them. If those terms of sale would, unrestricted, embrace *Holton's* private furniture, in private use in his family rooms, certainly they would embrace the five bolts of sheeting in the store-room. If they would embrace the furniture in boxes that had never been unpacked, they certainly would embrace the table linen on hand. If the parties thought it necessary to except the omnibus and horses in the stable, one would think they would have also excepted the carpeting in the store-room, if that was not intended to pass under the contract.

The court below found, as a question of fact, that the amount proved for the plaintiff was $2,714 08, and the court improperly found, as a matter of law, that there should be deducted from the amount of set-off proved by the defendant, the sum of $1,105 13, which would leave a recovery for the plaintiff of $1,014 33. As the amount improperly excluded by the court exceeded the recovery for the plaintiff, it follows that judgment should have been entered for the defendant. In our opinion, the "justice of the case" does not require a new trial. 2 G. & H., § 570, p. 276; Rice v. Rice, 6 Ind. 100. Holding, as we do, that the instrument, upon its face, requires that the articles excluded by the court from the bill of particulars filed by the appellant should have been allowed, and that the parol evidence introduced does not conflict with this construction, but rather supports it, the finding of facts in the special verdict requires a judgment for the appellant.

The judgment is reversed, with costs, and the cause remanded, with directions to the court below to enter a judgment for the appellant upon the special finding of facts.

T. A. Hendricks, O. B. Hord and A. W. Hendricks, for appellant.

J. T. Dye and A. C. Harris, for appellee.