Allen, J.
The counsel for the respondent is entirely right in his claim that the receipt of the express company, given to the consignor of the goods at the time of their receipt for transportation, is the contract by which the rights and obligations of the parties must be determined, and that, in the absence of fraud or mistake, the terms of the contract cannot be varied by parol or other extrinsic evidence, or by evidence of prior negotiations which were merged in the written contract. (Long v. N. Y. C. R. R. Co., 50 N. Y., 76; Belger v. Dinsmore, 51 id., 166.)
The contract, when interpreted with such aids as the law permits, either by proof of extrinsic facts and circumstances within the knowledge of the parties, and in respect to which *205 it was entered into, or of usage or custom, which may be regarded as incorporated in the contract and made a part of it, must be performed and effect be given to it according to its terms.
Certain extrinsic facts are, admitted which explain what would otherwise be ambiguous on the face of the written receipt. The receipt is of goods consigned to one King, at Windsor, Kova Scotia, and, without explanation or evidence of extrinsic facts, or some limitation in the contract itself, it would be presumptively a contract for their carriage by the defendants and a delivery of them to the consignee at their place of destination, according to this direction. The contract in terms provides, however, that the Adams Express Company shall not be liable beyond the route of that company, and the admission is that defendant’s line terminated at Boston and there connected with Turnér’s Express, carrying merchandise between Boston and Windsor, and by whom the goods were to be forwarded from Boston to their place of destination. The liability of defendant’s company, in respect to the carriage of the goods, terminated with the delivery to Turner’s Express at Boston, and the reference to that express in the body of the receipt is made intelligible by the knowledge of these facts, and especially by the fact that such express was the carrier connecting with the defendant at Boston. (Field v. Munson, 47 N. Y., 221.) The letters “ O. O. D.,” followed by an amount in dollars, have come to be very well understood in the community and by the public, but perhaps could not, without the aid of extrinsic evidence, be read and interpreted by the courts; that is, their meaning may not be considered as judicially settled, or so well understood that judicial notice can be taken of the puipose for which those letters are used, in the connection in which they are here found, or the contract to be implied from them. It was certainly competent to explain them, and thus remove all ambiguity by parol evidence.
The rule is that words, or forms of expression which are not of universal use, but are purely local or technical, may be *206 • explained by parol evidence, and the same is true of words or phrases having two meanings, one common and universal, and the other peculiar, technical or local. In such case parol evidence may be given of facts tending to show in which sense the word were used. (1 Greenl. Ev., § 295.) Where characters, marks or technical terms are used in a particular business, unintelligible to persons unacquainted with such" businesss, and occur in a written instrument, their meaning may be explained by parol evidence, if the explanation is consistent with the terms of the contract. (Dana v. Fiedler, 2 Her., 40; Barnard v. Kellogg, 10 Wallace, 383; Robinson v. U. S., 13 id., 363; Walls v. Bailey, 49 N. Y., 464; Attorney-General v. Shore, 11 Simons, 616.)
The evidence clearly explains the use of the letters referred to, and, as used, they stand for and represent certain words of which they are the initials, and constitute, in an abbreviated form, a direction well understood to collect the sum of money indicated by the figures following; and the direction, when making a part of a contract for the carriage of merchandise, as in this ease, implies a contract on the part of the carrier to collect the sum mentioned, and return the same to the consignor of the goods. The contract will then be read as if it was written at large, “ Collect on delivery $375 from Turner’s Express, Boston.”' Had the direction been merely to collect on delivery $375, there would have been no occasion for parol evidence, as there would have been no ambiguity. It would have been interpreted as a direction to collect the amount named of the ultimate consignee, upon a delivery of the goods to him by the last carrier, and intermediate carriers would not have been called upon to advance the amount on receipt of the goods. This interpretation, which is but the natural and ordinary meaning of the language used, is in accordance with the usage and custom as proved, and the interpretation of contracts in that form by those engaged in the business of carrying goods by express and as understood in that business.' All the witnesses agree to this.. Had the direction, then, in this case been in this form, “O. O. D.,” *207 which the witnesses all say is the usual form, it would have evidenced a contract, upon the proof spread out upon the record as to the signification of these letters, by the defendant to carry the goods safely to Boston, and then deliver them to Turner’s Express with the same direction, and the obligation of the latter company to collect the money of the consignee at Windsor, on delivery of the goods to him.
To the usual symbolical direction ordinarily accompanying merchandise by express, subject to charges, are the words, “ from Turner’s Express, Boston,” so that it reads “ Collect on delivery $375 from Turner’s Express, Boston.” The addition was not essential to limit and did not affect the liability of the defendants as carriers of the goods, and the printed receipt and contract protected them against liability beyond their route, and they were not necessary or usual to insure a collection by the last carrier, on a delivery to the ultimate consignee. The words, “from Turner’s Express Company,” are not ambiguous or uncertain, and are not made so by reference to any extrinsic fact, even if it were competent to create an ambiguity by extrinsic evidence. The words, or like words, when used in the same connection, have not acquired by usage or custom any peculiar or technical meaning, for all the witnesses agree that they have never known of these words, or words of a like import, being used in a contract of this character. The direction is a very plain and direct one to collect $375 from Turner’s Express, and can only be read as a direction to collect from that company, on delivery of the goods to it, the sum mentioned; and it can only receive another or different interpretation by a change in the language used, as by inserting “ by ” in place of “ from,” or by some other change which would give the phrase a meaning different from that which it would, in the language which the parties have used, ordinarily have. The evidence of the meaning put upon the simple direction to “ collect on delivery,” by usage, does not aid in interpreting a direction so entirely different as this is, by the addition of a very material clause.
*208 The right of the parties to make a different contract cannot be denied them, and every contract must be interpreted according to its peculiar terms, and a change so essential as this cannot be assumed to have been made unintentionally. The words added to the usual contract are of familiar and universal use, and have a well-defined meaning; they are not technical or peculiar, or used only in a particular business ; and there is no evidence that they were ever used in any other than the usual and ordinary sense.
It was not competent for the defendants to prove the meaning of the contract; they could only prove the peculiar meaning of technical words used; and if words of universal use were used in a technical or peculiar sense, they could prove facts tending to show that they were thus used; but this being done it was for the court to interpret the contract. (Hutchison v. Bowker, 5 M. & W., 535.) Neither was it competent for the plaintiff to prove a custom or usage inconsistent with the terms of the contract; and, if the language was explicit, it could not be varied or contradicted by parol evidence, or meaning given to the contract different from that called for by its terms. Ch. J. Tyndal, in Attorney-General v. Shore (supra), says: “ The general rule I take to be, that, when the words of any written instrument are free from ambiguity in themselves, and when external circumstances do not create any doubt or difficulty as to the proper application of those words to claimants under the instrument, or the subject-matter to which the instrument relates, such instrument is always to be construed according to the strict, plain, common meaning of the words themselves; and that in such case evidence dehors the instrument, for the purpose of explaining it according to the surmised or alleged intention of the parties to the instrument, is utterly inadmissible.”
Custom and usage is resorted to only to ascertain and explain the meaning and intention of the parties to a contract when the same could not be ascertained without extrinsic evidence, but never to contravene the express stipulations; and if there is no uncertainty as to the terms of a contract, *209 usage cannot be proved to contradict or qualify its provisions. (Barnard v. Kellogg, 10 Wallace, supra; Bradley v. Wheeler, 44 N. Y., 495; Wheeler v. Newbould, 16 id., 392; Walls v. Bailey, 49 id., 464.) In matters as to which a contract is silent, custom and usage may be resorted to for the purpose of annexing incidents to it. (Hutton v. Warren, 1 M. & W., 466 ; Wigglesworth v. Dallison, 1 Douglas, 201.) But the incident sought to be imported into the contract must not be inconsistent with its express terms or any necessary implication from those terms. (Note to Wigglesworth v. Dallison, 1 Smith’s Leading Cases [6 Amer. ed.], 677, and cases cited.) Usage is sometimes admissible to add to or explain, but never to vary or contradict, either expressly or by implication, the terms of a written instrument, or the fair and legal import of a contract. (Allen v. Dykers, 3 Hill, 593 ; Hinton v. locke, 5 id., 437; Magee v. Atkinson, 2 M. & W., 442; Adams v. Wordley, 1 id., 374, and other cases cited; 1 Smith’s Leading Cases, supra, at page 680, et seg.) As before suggested, there was no evidence of any usage which could add to, vary or affect, in any way, the meaning of the words “ from Turner’s Express, Boston.”
They are to receive the interpretation and have the meaning given them which they have, as universally used; and in no way can they be read except as a direction to collect the money specified from Turner’s Express, on the delivery of the merchandise to that company. Whether such a direction was reasonable or unreasonable is not for us to consider. It was not difficult to be observed by the defendants; and if the connecting carrier did not choose to accept the goods and make the advance, the contract of the defendants was performed by a tender of the goods; and if refused they could return them to the plaintiffs and demand compensation for the service. It cannot, certainly, be said to be unreasonable. It may have been that, while the consignees were willing to intrust the collection of the charges to the defendants, they had not the same faith in the solvency or integrity of any connecting carrier; or they may have been unwilling to have *210 their funds in the possession of agents so far from them. It was entirely competent for the carriers to make a contract in the precise terms in which this was made; and a contract does not, like a custom, depend upon its reasonableness for its validity. The defendants ran no risk in carrying valueless property, subject to heavy charges, as suggested by the counsel; they risked nothing but the freight, and in this instance they knew the consignors and the character of the property received.
But if it can, upon any view of the terms of the direction, or the evidence given in respect to the words or phrases employed, be claimed that the words were used in a sense and with a meaning other than that which ordinarily attaches to them, it may be questionable whether the court should have excluded the evidence offered by the plairitiff, that the defendants had agreed to receive and carry the goods upon the terms indicated by the terms of the direction. It is true that, as a contract or agreement, the prior verbal negotiations and parol undertaking were merged in the written contract; but there are cases holding, in effect, that the prior negotiations and conversation of the parties can be given in evidence, when there is an ambiguity, to show in what sense particular words or phrases were used by the parties in making the contract. (Selden v. Williams, 9 Watts, 9; Gray v. Harper, 1 Story R., 574; Kemble v. Lull, 3 McLean, 272.) But, without passing upon the question, we may say that its exclusion cannot be sustained on the ground that it was offered too late. It was strictly replicatory, in answer to the evidence on the part of the defendant, and could not have been with propriety offered, as a part of the plaintiff’s case, before evidence had been given of the custom and usage of the meaning of the contract, as claimed by the defendants.
But, for the reason before assigned, the judgment must be reversed, and a new trial granted.
All concur, except Gbover and Bapallo, JJ., dissenting.
Judgment reversed.