SAMUEL EPPSTEIN *et al.*

*v.*

ISAAC KUHN.

*Opinion filed December 22, 1906—Rehearing denied Feb. 8, 1907.*

1. LANDLORD AND TENANT—*effect where tenant for years holds over without new contract.* A tenant for a term of years under a lease who holds over without a new contract may be treated by the landlord as a trespasser or a tenant, and by accepting a month's rent he elects to treat him as a tenant from year to year on the terms of the original lease.

2. SPECIFIC PERFORMANCE—*year to year tenancy is an encumbrance on the title to property.* A year to year tenancy is an encumbrance, within the meaning of a contract for a conveyance of title free from all encumbrances; and if the existence of such tenancy was unknown to the proposed vendee he is entitled to refuse a deed, unaccompanied by possession, without forfeiting his rights under the contract, and may maintain a bill for specific performance and to require the vendor and his tenant to interplead and adjust their rights.

3. SAME—*when damages for depreciation should be deducted from purchase price.* If a proposed vendor is unable to convey a title free from all encumbrances, in accordance with his contract, at the time specified for such conveyance, the proposed vendee, in an action for specific performance, is entitled to have deducted from the purchase price the amount the premises were depreciated in value by reason of the existence of the encumbrance, including loss by fire.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

Appellant Samuel Eppstein was, and had been for several years prior to June 7, 1904, the owner of premises in the city of Champaign, Illinois, known as No. 41 Main street. The legal title was in his son, William D. Eppstein, but there is no dispute that the premises really belonged to his father. Isaac Kuhn, appellee, and his father, owned a building and premises but a few feet distant from Eppstein's, in which they were, and had been for years prior to June 7,

1904, conducting a clothing store. On said June 7, 1904, appellee contracted to purchase from Samuel Eppstein the said premises known as No. 41 Main street for the sum of $7500. He paid Eppstein $500 cash, and Eppstein signed and delivered to him the following written agreement:

"CHAMPAIGN, ILLINOIS, *June 7, 1904.*

"I herewith acknowledge receipt of five hundred dollars as part payment on my building, 41 Main street, which I sell and convey to Isaac Kuhn for seventy-five hundred dollars; and I hereby agree to deliver to Isaac Kuhn, Champaign, Illinois, on or before July 1, a clear title and deed, free of any and all encumbrances whatsoever, taxes paid by me to date of delivery of abstract, on payment of balance by said Isaac Kuhn of seven thousand dollars.

SAMUEL EPPSTEIN."

At the time this agreement was entered into Eppstein resided in the city of Chicago and the premises agreed to be conveyed were in the possession of John McDonnell, a tenant of Eppstein. Eppstein procured his son, William D.,.to execute a deed to appellee and forwarded it to the Trevett & Mattis Banking Company, of Champaign, Illinois, with instructions to the bank to deliver it to appellee upon payment by him of $7000, balance of the purchase price. Appellee was notified that the Trevett & Mattis Banking Company had the deed, and he called at the bank for the purpose of paying the balance due and securing the deed. He knew the premises were occupied by a tenant, and insisted that the possession be delivered to him with the deed. The bank officers informed him they could do nothing but deliver the deed and collect $7000. On the first day of July, 1904, appellee, with his attorney, called at the bank, tendered $7000 in gold, and demanded delivery of the deed and possession of the premises at the same time. He was informed by the bank officers that they could do nothing but deliver the deed and collect the money. Appellee refused to pay the money and accept the deed unless the delivery of the deed was accompanied by the delivery of the possession of the premises also. After numerous conferences and some correspondence

between the parties and their attorneys, Eppstein demanded that appellee accept the deed to the premises with the tenant, McDonnell, in possession, or that the contract be canceled, and he would return the cash payment made upon the delivery to him of the contract. This appellee declined, and on the 10th day of September, 1904, filed a bill for the specific performance of the contract, and for an abatement of the purchase price on account of damages appellee claimed to have sustained on account of the non-performance of the contract by Eppstein. McDonnell, the tenant, remained in possession of the premises until the 22d day of December, 1904, when the building on said premises was partially destroyed by fire, whereupon McDonnell vacated. Appellee then filed a supplemental bill alleging the destruction of the building by fire; that Eppstein had wrongfully retained possession of the premises after making the contract, through his tenant, McDonnell, and that by reason thereof appellee could not procure any insurance on the building. The supplemental bill alleged that Eppstein had insurance on said building, which he had collected; that the building was reasonably worth $5000; that appellee had been damaged in that sum by the fire, and prayed that, in addition to the deductions prayed in the original bill, an abatement be made from the contract price of the amount of deterioration in the value of said premises resulting from the fire.

At the April term, 1905, of the circuit court of Champaign county the Trevett & Mattis Banking Company filed an answer, admitting they held the deed, with the instructions to deliver on the payment of $7000. McDonnell disclaimed any interest in the premises and the Eppsteins demurred to the bill. The circuit court sustained the demurrer and dismissed the bill. That decree was reversed upon an appeal by appellee to this court. (*Kuhn* v. *Eppstein,* 219 Ill. 154.) Upon the case being again docketed in the circuit court of Champaign county, the Eppsteins filed their answer and William D. filed a cross-bill. Upon issue being joined

on original, supplemental and cross-bills, the cause was referred to a special master in chancery, with directions to report his conclusions of law and fact. After hearing the evidence the master reported that the Eppsteins were both bound by the contract with appellee; that after receiving $500 the Eppsteins had deposited with the Trevett & Mattis Banking Company a warranty deed containing the usual covenants of warranty, to be delivered to appellee upon the payment of the balance of the purchase price; that said Trevett & Mattis Banking Company offered to deliver the deed, but were unable to deliver possession of the premises on account of John McDonnell being in possession thereof and claiming an interest therein as tenant of the Eppsteins; that McDonnell had been in possession a considerable period of time before the execution of the contract, and that this was known to appellee at the time the contract was made; that there had been no modification of the contract between the parties, and that the Eppsteins had failed and refused to perform it on their part. The master found that appellee was the equitable owner of the premises at and before the destruction of the building by fire; that the insurable value of the building was $3000, and that the Eppsteins, by refusing to comply with their contract, prevented appellee from procuring any insurance on the premises, and were therefore liable to him for the sum of $3000, less the cost of the insurance, $40.56. The master also found that appellee had sustained damages to the amount of $260 on account of procuring plans for the remodeling of the premises and advertising his business on the supposition that he would have possession July 1, 1904.

Objections and exceptions were filed by both parties to the report of the master. Upon the hearing the court overruled the exceptions filed by appellee and overruled all the exceptions filed by the Eppsteins, except those relating to special damages for a failure to perform the contract. Those exceptions were sustained. The court found by its decree

that McDonnell had no title or interest in the premises July
1, 1904, except that of possession, subject only to the de-
mand of the owner of the building; that the Eppsteins failed
to obtain possession of the building and deliver the same to
appellee according to their contract July 1, 1904, and that
by reason of such failure appellee refused to accept the deed
and pay the balance of the purchase price; that appellee was
entitled to nominal damages for the non-performance of the
contract, which the court fixed at one dollar. The court
further found that the Eppsteins had the building insured;
that during the pendency of the suit it was damaged by fire,
and that it was admitted by the pleadings Samuel Eppstein
had collected $2500 insurance, for which he should account
to appellee, less the amount paid therefor. The court found
the equities of the case with appellee, and that he was enti-
tled to the specific performance of the contract and to have
the premises conveyed to him upon the payment of the
amount found due by the court. This amount was found to
be $4535, and was arrived at by deducting from $7000 the
insurance collected by the Eppsteins, $2500, less $36 premium
paid, and one dollar nominal damages. From that decree
the Eppsteins have prosecuted this appeal.

WILLIAM E. O'NEILL, and A. D. MULLIKEN, for appel-
lants.

RAY & DOBBINS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellants' contention is, that the defect in the title on
account of the occupancy of the premises by McDonnell was
not a substantial and material one; that appellee knew Mc-
Donnell was in the possession of the premises when the con-
tract was made, and that as appellants offered to perform the
contract so far as they were able to, and convey all the title
they had to the premises, a decree for a specific performance

could amount to nothing more than they had offered to do, and that in such cases it is not the province of a court of equity to award specific performance and abate from the purchase price the damages sustained by the vendee for the failure to convey the premises free from the encumbrance; that in such case the law affords a complete and adequate remedy and jurisdiction will not be assumed by a court of equity. Appellee has assigned cross-errors challenging the correctness of that part of the decree finding the amount to be abated from the balance of the purchase price.

The proof shows McDonnell had a written lease, under seal, of the premises from April 15, 1902, to April 15, 1904, at the rate of $50 per month. The lease gave McDonnell the option to extend it on the same terms to April 15, 1907. On March 24, 1904, Samuel Eppstein wrote McDonnell telling him if he desired to retain the building another year under the old agreement he could do so, and requesting a reply by return mail. McDonnell testified that to the best of his recollection he replied to that letter, accepting the offer. He kept no copy or memorandum of the reply, and Eppstein testified he received no answer to his letter. By the terms of the lease the rent was payable on the 15th day of each month. Whether there was any reply by McDonnell to the letters of Eppstein or not, the proof shows McDonnell paid the rent April 15, May 18 and June 15, 1904, and these payments were endorsed upon the lease by Eppstein or his agent. The proof shows appellee knew McDonnell was in possession of the premises, but we do not think it shows he knew what McDonnell's rights were or what he claimed them to be. McDonnell's possession was spoken of by appellee and Samuel Eppstein on the day the contract for sale was made, and Eppstein told appellee McDonnell had no lease on the premises and no right to retain possession of them. McDonnell came into the store of appellee on the day the contract for sale was made and Eppstein told him appellee was his new landlord. He appears to have said very little about his in-

tentions with reference to giving up or withholding possession of the premises. Samuel Eppstein testified that after the contract was signed he went to McDonnell's place of business, told him he had sold the property to appellee, and that McDonnell said he supposed he would have to vacate then, and that he replied to him that he could see Mr. Kuhn about that. This was before McDonnell came into appellee's store and appellee was introduced to him as his new landlord. Eppstein testified that when this occurred McDonnell said, "I expect I will have to get out then," to which appellee replied, "We will fix that all right." Appellee testified that McDonnell laughed when Eppstein introduced appellee to him as his new landlord, and said he didn't want to know him, or words to that effect. McDonnell testified that his recollection was that appellee said he would not want the building for thirty days, and that he replied when the time came for him to vacate he thought there would be no trouble in getting him out. The proof does not show any acknowledgment by McDonnell that he had no right to retain possession of the building nor any agreement by him to vacate. He testified he intended to retain possession if he had a right to, and that he employed counsel for that purpose; that shortly after the contract for sale was made appellee came to the building with an architect to measure the room, and he told appellee he need not measure it as he intended to stay there, and showed him the letter of March 24 from Samuel Eppstein, offering to let him have the premises for another year under the terms of the lease. According to the testimony McDonnell sometimes claimed he had a right to the premises for one year from the expiration of the old lease, and sometimes three years. When Samuel Eppstein was notified by appellee of McDonnell's refusal to vacate and of his claim of right to retain possession he went to see McDonnell, and McDonnell told him that he was standing on his rights and refused to vacate. Samuel Eppstein testified he consulted with counsel about compelling him to vacate, and was

advised it would probably take a long time to do that, and that he then offered to deduct $200 from the purchase price and settle the matter; that appellee said he would give Mc-Donnell $200 for possession, and afterwards informed Eppstein that he had offered him $400, but that McDonnell refused to accept it and vacate the premises. Being unable to settle the question of possession, Eppstein afterwards notified appellee he could either accept the deed or he would withdraw it and return the cash payment made, upon the surrender of the contract.

We find no proof in the record that appellee knew anything about the lease of the premises from Eppstein to McDonnell, or its terms, or of the letter of March 24, 1904, from Eppstein to McDonnell, or of the payment of the rent by McDonnell after the expiration of the term originally provided for by the lease. Neither do we think it is proven by the testimony that appellee was informed of McDonnell's rights, or what he claimed to be his rights, at the time the contract for the purchase of the premises was made. Eppstein's position then was, and the position of his counsel now is, that McDonnell was merely a tenant from month to month, and that the claim set up by him of the right to hold the premises for either one or three years was without any foundation whatever.

When this case was before this court on the former appeal it was held that if McDonnell's tenancy was for a term of years the lease was an encumbrance on the property. In *Goldsborough v. Gable,* 140 Ill. 269, it was held that where a tenant for a term of years remains in possession after the expiration of the term described in the lease, without any new contract authorizing him to do so, it is optional with the landlord to treat him as a trespasser or waive the wrong of holding over and treat him as a tenant, and by accepting payment of a month's rent after the expiration of the term of the lease the landlord makes his election to treat the party as a tenant from year to year, upon the same terms as is provided in the

original lease. This rule could have no application where a new contract is made between the landlord and tenant under which the tenant remains in possession. (*Weber* v. *Powers,* 213 Ill. 370.) Here there does not appear to have been any new contract made between the landlord and tenant. It is true, a son of appellant testifies that some time before the lease expired McDonnell told him he would not want to continue the lease. But we do not think the circumstances under which this statement was made could deprive McDonnell of the privilege of claiming the option given him by the covenants of the lease. In addition to this provision of the lease, as we have before stated, Eppstein wrote McDonnell a letter proposing to give him another year's occupancy of the premises under the same terms provided in the lease. Whether this proposition was accepted by letter or not is not made clear by the testimony. But independently of this letter, McDonnell had a right, under the covenants of the lease, to continue in possession without any new contract. This proposition as a correct statement of law is admitted by counsel for appellants, but it is claimed that McDonnell refused to claim the benefit of the option contained in the lease,—refused to accept a continuance of his tenancy beyond the expiration of the original term therein provided and notified Eppstein of that fact.

In addition to the testimony of Samuel Eppstein's son, above referred to, Eppstein relies upon some other correspondence to which our attention is called. On February 13, 1904, Samuel Eppstein wrote McDonnell that his lease would expire April 15 next, and inquiring whether he wanted to continue in the occupation of the premises, and informing him if he did not he would rent to some one else. He asked for a reply by return mail, but says none was ever received, but that later he received a letter from McDonnell dated March 19, 1904, as follows:

"*Dear Sir*—Not having definite understanding with your son while here, I would like to know if you desire me to vacate room when my lease expires. An early reply will oblige."

Eppstein's letter to McDonnell of March 24 was in reply to that letter, and, as we have said, as to whether McDonnell replied to Eppstein the evidence is conflicting.

Considering all this testimony in connection with the acceptance of the rent after the expiration of the original term of the lease, we are of opinion the evidence does not show McDonnell abandoned or waived his rights under the lease. Said lease was therefore an encumbrance upon the premises, the existence of which, and its nature and extent, were unknown to appellee at the time the contract for the purchase of the premises was made.

In addition to the other relief prayed by the bill, the prayer asked that Samuel Eppstein and John B. McDonnell be required to interplead and adjust the controversy between them, and we are of opinion that under the decisions in this State appellee was entitled to resort to a court of equity for the relief prayed, and that under the facts the court properly decreed him to be entitled to a conveyance of the premises. *Snyder* v. *Spaulding,* 57 Ill. 480; *Lancaster* v. *Roberts,* 144 id. 213; *Bragg* v. *Olson,* 128 id. 540; *Hunt* v. *Smith,* 139 id. 296; *Bishop* v. *Newton,* 20 id. 175; *Morgan* v. *Smith,* 11 id. 194; *Mathison* v. *Wilson,* 87 id. 51; *Wallace* v. *McLaughlin,* 57 id. 53.

We are of opinion, however, the court erred in holding appellee was entitled to only nominal damages. Under the facts disclosed by the proof the premises were subject to an encumbrance of the lease to McDonnell for at least one year from April 15, 1904. Eppstein having contracted to convey appellee the premises free from all encumbrances July 1, 1904, appellee was entitled to have deducted from the purchase price the amount the premises were depreciated in value, if they were depreciated, by reason of the existence of the encumbrance.

Appellee also offered testimony before the master to prove the depreciation in the value of the premises by reason of the fire, but his claim in this respect was disallowed. The

proof shows the reason the conveyance was not made was because Eppstein was unable to comply with his contract by conveying a title that was clear of all encumbrances. The rule is, that where in such cases a loss to the premises occurs by fire before the vendor is in a position to convey a good title, such loss will fall on him. *Lombard* v. *Chicago Sinai Congregation*, 64 Ill. 477; *Same* v. *Same*, 75 id. 271; *Phinizy* v. *Guernsey*, 78 Am. St. Rep. 207; 29 Am. & Eng. Ency. of Law, (2d ed.) 713.

The proof in this record is not in that satisfactory condition upon the question of the amount appellee is entitled to have abated from the purchase price that we feel warranted in determining said amount from said testimony. That part of the decree, therefore, holding that appellee is entitled to a specific performance will be affirmed, and that part of it holding that McDonnell had no interest in the premises except that of possession, subject only to the demand of the owner, and awarding appellee only nominal damages, will be reversed and the cause remanded, with directions to the circuit court to hear further testimony of the parties, or either of them, as to the difference in the value of the premises, if any, resulting from the encumbrance by virtue of the lease to McDonnell and the deterioration in the market value caused by the fire. If the proof shows that the market value of the premises has been diminished by one or both of these causes, the amount of such diminution is to be deducted from the $7000 and a conveyance ordered made to appellee upon payment of the balance.

Appellee has furnished an additional abstract and asks that it be taxed to appellants. This motion is denied.

*Reversed in part and remanded, with directions.*