# E. DELAFIELD SMITH v. E. R. BRADLEY and Grace E. Bradley.

(147 N. W. 784.)

Smith brings foreclosure of a purchase-price real-estate mortgage given by Bradley mortgagor as a part performance of a decree of specific performance of a contract for sale of land by Smith, including buildings, fencing, and an assignment of lease. Smith then refused to assign lease. Pending specific performance, Smith had injured and removed buildings from the land sold, and for which Bradley offset damages against this foreclosure debt. *Held:*

**Acceptance of deed — contract — full performance — partial breach — damages.**

1. Bradley's acceptance of Smith's deed was not taken in full performance of the contract, still executory as but partially performed, and for partial breach of which actual damages sustained may be recouped.

**School lands — lease — default — damages.**

2. Defendant is denied recovery for nonassignment of school leases, as for three years after Smith's default the school land in question was not leased to anyone, and which fact inquiry would have disclosed. Bradley could have received by a lease from the state all he would have obtained by an assignment of a similar lease from Smith, and therefore has suffered no damages, except as a result of his own failure to exercise ordinary diligence.

**Counterclaim — reduction — foreclosure — judgment.**

3. With a reduction of $960 and interest on the counterclaim allowed, judgment of foreclosure is awarded.

**Costs— disbursements — appeal.**

4. Appellant Smith will recover costs and disbursements of trial in district court and on this appeal.

Opinion filed May 19, 1914.

Appeal from the District Court of Foster County, *Coffey,* J.

Modified and affirmed.

*T. F. McCue,* for appellant.

This is a proper case for trial *de novo* in the supreme court, upon all proper evidence offered. All other evidence to which proper objection was made will not be considered. Nichols & S. Co. v. Stangler, 7 N. D. 102, 72 N. W. 1089.

Damages growing out of an alleged tortious act cannot be offset against plaintiff's damages growing out of contract, and breach thereof. Braithwaite v. Akin, 3 N. D. 365, 56 N. W. 133, and cases therein cited.

Until a deed is accepted by the grantee, no delivery can be claimed. Bank of Healdsburg v. Bailhache, 65 Cal. 327, 4 Pac. 106.

A compromise of the matters in dispute was actually made and acted upon, and the law will not permit the parties to dispute it. Proctor v. Heaton, 114 Ind. 250, 15 N. E. 21; Cobb v. Arnold, 8 Met. 403; Paxson v. Hewson, 14 Phila. 174.

A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all obligations arising from it, so far as the facts are known or ought to have been known to the person accepting. Rev. Codes 1905, § 5310; Morris v. Ewing, 8 N. D. 99, 76 N. W. 1047; Delano v. Jacoby, 96 Cal. 275, 31 Am. St. Rep. 201, 31 Pac. 290.

The rights of one who accepts a deed with knowledge of all attendant material facts are fixed by the deed. Hunt v. Clark, 46 Iowa, 291; Houghtaling v. Lewis, 10 Johns. 296; Farmers' & M. Bank v. Galbraith, 10 Pa. 490, 51 Am. Dec. 498; Shontz v. Brown, 27 Pa. 131; Andrus v. St. Louis Smelting & Ref. Co. 130 U. S. 643, 32 L. ed. 1054, 9 Sup. Ct. Rep. 645; Devlin, Deeds, 2d ed. p. 293, § 264; Citing: Bank of Healdsburg v. Bailhache, 65 Cal. 327, 4 Pac. 106; Harrington v. Gage, 6 Vt. 532; Mitchell v. Bartlett, 51 N. Y. 453; Jackson ex dem. Griswold v. Bard, 4 Johns. 230, 4 Am. Dec. 267; Bryan v. Swain, 56 Cal. 616; Carter v. Beck, 40 Ala. 599; Cronister v. Cronister, 1 Watts & S. 442; Fritz v. McGill, 31 Minn. 536, 18 N. W. 753; Jones v. Wood, 16 Pa. 25; Gibson v. Richart, 83 Ind. 313; Frederick v. Youngblood, 19 Ala. 680, 54 Am. Dec. 209; Smith v. Fitzgerald, 59 Vt. 451, 9 Atl. 604.

A grant of land only includes the property in the condition that it is in at the date of delivery and acceptance of the deed. Muscogee Mfg. Co. v. Eagle & P. Mills, 126 Ga. 210, 7 L.R.A.(N.S.) 1139, 54 S. E. 1028; Gregg v. Sayre, 8 Pet. 244, 8 L. ed. 932; 9 Am. & Eng. Enc. Law, 2d ed. 161; United States v. LeBaron, 19 How. 75, 15 L. ed. 526.

One who tacitly encourages an act to be done cannot afterwards exercise his legal right in opposition to such consent, where, by such acts

and conduct, the other party was induced to and did change his position to his detriment. Swain v. Seamens, 9 Wall. 272, 19 L. ed. 560.

Having gone into possession of the land, the defendant accepted it in its then condition, and was required to turn over the notes and mortgage. Cary v. Wheeler, 14 Wis. 282; Terry v. Munger, 121 N. Y. 161, 8 L.R.A. 216, 18 Am. St. Rep. 803, 24 N. E. 272.

He who by his acts or language leads another to do what he would not otherwise have done shall not subject such person to loss or injury. Dickerson v. Colgrove, 100 U. S. 578, 25 L. ed. 618; McDonald v. Beatty, 10 N. D. 520, 88 N. W. 281; Brigham Young Trust Co. v. Wagener, 13 Utah, 236, 44 Pac. 1030; Tolerton & S. Co. v. Casperson, 7 S. D. 206, 63 N. W. 908; Bigelow, Estoppel, p. 560.

Findings must be supported by competent evidence. Sykes v. Beck, 12 N. D. 261, 96 N. W. 844; Shambaugh v. Current, 111 Iowa, 121, 82 N. W. 497; Randall v. Thornton, 43 Me. 226, 69 Am. Dec. 56; Shepherd v. Gilroy, 46 Iowa, 193; Mast v. Pearce, 58 Iowa, 579, 43 Am. Rep. 125, 8 N. W. 632, 12 N. W. 597.

Damages cannot be hypothecated upon mere inference or speculation. Barron v. Northern P. R. Co. 16 N. D. 277, 113 N. W. 102.

The contract itself must furnish the measure of damages. Cranmer v. Kohn, 7 S. D. 247, 64 N. W. 125; Davis v. Tubbs, 7 S. D. 488, 64 N. W. 534; Hudson v. Archer, 9 S. D. 240, 68 N. W. 541.

One is bound to minimize the damages, when he can do so by a small expenditure. Davis v. Fish, 1 G. Greene, 406, 48 Am. Dec. 387; Little v. McGuire, 43 Iowa, 447; Van Pelt v. Davenport, 42 Iowa, 308, 20 Am. Rep. 622.

*Edward P. Kelly*, for respondents.

The tort may be waived, and suit brought as upon contract. Clark, Contr. pp. 693–695.

Or damages arising out of a tortious act may be offset or counterclaimed. Fleckten v. Spicer, 63 Minn. 454, 65 N. W. 926; Vallentyne v. Immigration Land Co. 95 Minn. 195, 103 N. W. 1028, 5 Ann. Cas. 212; Arentsen v. Moreland, 122 Wis. 167, 65 L.R.A. 973, 106 Am. St. Rep. 951, 99 N. W. 790, 2 Ann. Cas. 628.

Even though plaintiff's failure to perform the contract as agreed was not the result of fraud, still defendant has the right to stand on the

contract as made, and is entitled to damages for failure to perform. Ibid; Lillie v. Dunbar, 62 Wis. 198, 22 N. W. 467; Seymour v. Cushway, 100 Wis. 590, 69 Am. St. Rep. 957, 76 N. W. 769; Mississippi River Logging Co. v. Miller, 109 Wis. 77, 85 N. W. 193.

The covenants and conditions of the executory contract upon which defendant B. relies are independent of the warranties in the warranty deed subsequently accepted, and are collateral covenants, and as such do not merge in the deed. Williams v. Frybarger, 9 Ind. App. 558, 37 N. E. 302; Sandford v. Travers, 40 N. Y. 140; Remington v. Palmer, 62 N. Y. 31; Sage v. Truslow, 88 N. Y. 240; Bull v. Willard, 9 Barb. 641; Cox v. Henry, 32 Pa. 18; Selden v. Williams, 9 Watts, 9; Atwood v. Norton, 27 Barb. 638.

The provisions of the contract not included still remain in force. Lehman v. Paxton, 7 Pa. Super. Ct. 259; Close v. Zell, 141 Pa. 390, 23 Am. St. Rep. 296, 21 Atl. 770; Walker v. France, 112 Pa. 203, 5 Atl. 208; Brinker v. Byers, 2 Penr. & W. 528; Sessa v. Arthur, 183 Mass. 230, 66 N. E. 804; Minor v. Edwards, 12 Mo. 137, 49 Am. Dec. 121; German American Real Estate Co. v. Starke, 84 Hun, 430, 32 N. Y. Supp. 403; Davis v. Lee, 52 Wash. 330, 132 Am. St. Rep. 973, 100 Pac. 752.

Goss, J.  Smith brings this action to foreclose a purchase-price real-estate mortgage.  May 12, 1906, he gave Bradley an option contract in writing on a section of land, which was accepted.  Smith then refused to perform under the contract, whereupon specific performance was brought, and speedily went to judgment in Bradley's favor October 17, 1906.  Therein assignments of certain school leases, stipulated for in the option, were treated as collateral to the contract of purchase, and Bradley was permitted to receive performance from Smith without such assignments.  The failure to assign these leases is here the basis for a claim of damages by Bradley.  Smith appealed from the judgment in specific performance, but his appeal was dismissed.  February 17, 1907, pending that appeal, Bradley secured possession of the land sold, and has since retained it.  After the appeal was dismissed the attitude of the parties changed, and Smith became anxious for specific performance of the decree, and to secure possession of the purchase-

price mortgage and notes, but Bradley refused to sanction or permit delivery of them until Smith should pay him for the damages now sought to be recovered, and remained in possession of both the farm and his notes and mortgage until 1909. Smith then served Bradley with notice that, if the decree was not at once complied with, Smith would treat further noncompliance as a waiver by Bradley of all benefits under that decree. Smith then sued Bradley to quiet title to the land in Smith, as against the decree, claiming Bradley to have forfeited his rights thereunder. The answer set up title in Bradley under the judgment decreeing specific performance. No issue of damages was raised. Negotiations then had resulted in a written stipulation dismissing the action to quiet title. Specific performance as to the section of land was then had, Bradley accepting the deed, and Smith the purchase-price mortgage and notes June 10, 1909. In November following, Smith brings foreclosure of this mortgage. Bradley answers, reciting the circumstances under which the notes and mortgages were delivered, and that the same was in performance of the option contract, and seeks by recoupment to recover the sum of over $4,000 claimed as his damages because Smith failed to deliver his assignments of school leases and fencing on the school land, and for Smith's removal of and injury to buildings and improvements on the land so deeded to Bradley. Judgment of foreclosure was awarded plaintiff for the sum of $9,543.60, less damages $2,020.99, allowed Bradley as an offset. From this judgment Smith appeals. Retrial is demanded of such award of damages.

The first question raised is as to whether Bradley, after the settlement of the action to quiet title, and after his acceptance of Smith's deed and his delivery to Smith of this mortgage, under the decree of specific performance, now can assert any claim to damages, as against Smith's foreclosure for the purchase price.

No issue of damages has ever been involved in any previous action. Undoubtedly, had the damages accrued prior to the trial of the action of specific performance, as to which there is no proof, inasmuch as possession was taken four months later and damages were then first ascertained, Bradley could have litigated damages in the action of specific performance, had he so desired. Waterman on Specific Per-

formance of Contracts, § 5 : "A person may be entitled to damages for violations of the contract up to the time of bringing the suit, with specific performance for the future; or to specific performance generally and damages for acts which do not admit of a decree for specific performance; " or, as stated in 36 Cyc. 753, "the court, having acquired jurisdiction, may, as incidental to the remedy, assess such damages as appear to have been sustained by plaintiff." But, instead, plaintiff could elect to recoup for damages sustained when payment of the purchase price is sought to be enforced by foreclosure; Warvelle, Vend. & P. §§ 962, 963; Eppstein v. Kuhn, 10 L.R.A.(N.S.) 117 and note (225 Ill. 115, 80 N. E. 80) ; also note in 10 L.R.A.(N.S.) 125.

Bradley has done nothing to waive his cause of action for these damages or to estop himself from now asserting them. They were not involved in the action for specific performance, and did not need to be there litigated, and that judgment in no wise interferes with the subsequent recovery of damages, nor, that being true, did the acceptance of the deeds and delivery of this mortgage estop Bradley from claiming damages for noncompliance with the contract so specifically enforced by judgment, where such damages claimed arose subsequent to the contract and from Smith's injury to, or waste or spoliation of, the property the subject of the contract. Phinizy v. Guernsey, 50 L.R.A. 680 and note, 78 Am. St. Rep. 207 and note (111 Ga. 346, 36 S. E. 796) ; note to Hawkes v. Kuhn, 10 L.R.A.(N.S.) 125. Bradley had the right to elect to specifically perform the contract and make Smith respond in damages as for breach of contract for so much of the property as Smith was unable to deliver as he had contracted to do, which in this instance applies to certain buildings and water tanks removed from the section, and for Smith's conceded inability to perform by assignment of school leases, and for his sale of fences off of said school land subsequent to his contracting to convey those fences to Bradley. In other words, Bradley could elect to obtain, as he has done, the specific property, so far as specific performance could be had, and also to recover damages for breach of that portion of the contract for which he had not received consideration by the partial performance. Warvelle, Vend. & P. §§ 962, 963; 50 L.R.A. 680; note to 10 L.R.A. (N.S.) 125; Melin v. Woolley, 22 L.R.A.(N.S.) 595 and note (103

Minn. 498, 115 N. W. 654, 946); Sonnesyn v. Akin, 14 N. D. 248, 104 N. W. 1026. Knudtson v. Robinson, 18 N. D. 12–17, 118 N. W. 1051, also recognizes such to be the law, but refuses application for want of mutuality of the contract there sought to be enforced. And this disposes of all questions of tort sought to be raised by appellant, as this is an action for breach of contract, and not one sounding in tort.

Appellant next quotes § 5310 Rev. Codes 1905, that "a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known or ought to be known to the person accepting," and asserts that Bradley cannot be heard to urge damages as a recoupment to the purchase-price mortgage, because he accepted Smith's deed and derived all the benefits thereunder, with full knowledge of the previous damage done the buildings and property, and that the acceptance of the deed estops Bradley from asserting his counterclaim. The answer is, as heretofore stated, that Bradley accepted the deed under the decree of specific performance, permitting him to do so, and such acceptance would not, in the absence of express or implied contract, constitute a waiver of his right of action for damages for injury to property committed subsequent to the entering into the contract so specifically enforced, unless Bradley should have litigated the issue of damages in the action for specific performance, and this he was not obliged to do. To the extent that Smith has failed to deliver the property covered by the option contract, and in the condition contracted for, under the evidence that contract is still executory, notwithstanding its partial performance by delivery of deeds. It is for damages for matters collateral to the title transferred by deed that Bradley seeks recovery as for partial default in performance. Williams v. Frybarger, 9 Ind. App. 558, 37 N. E. 302; Lehman v. Paxton, 7 Pa. Super. Ct. 259; Selden v. Williams, 9 Watts, 9; Sage v. Truslow, 88 N. Y. 240; Remington v. Palmer, 62 N. Y. 31; Atwood v. Norton, 27 Barb. 638. The general rule on merger of contract in deed, illustrated by Clifton v. Jackson Iron Co. 16 Am. St. Rep. 621 and note (74 Mich. 183, 41 N. W. 891) has no application. Andrus v. St. Louis Smelting & Ref. Co. 130 U. S. 643, 32 L. ed. 1054, 9 Sup. Ct. Rep. 645.

Nor did the dismissal, by mutual agreement, of the action to quiet title, and the delivery of the deed and mortgage, operate in law as a full performance by Smith of the terms of the then executory contract, specific performance of which had been decreed, and which contract was established in such decree, and which decree permits Bradley to accept a partial performance, provided Smith could not assign the school leases. From the decree itself, and from all the testimony, including that of Smith's own counsel, it appears that Bradley insisted upon reserving his cause of action for damages for the partial breach of performance of the executory contract, notwithstanding delivery of the deed and dismissal of the action to quiet title. Such dismissal, and simultaneous exchange of papers, did not operate to waive by contract the right of action already accrued in Bradley, because of Smith's partial breach concerning the school lands and his prior injury to buildings on said real property. The abandonment by Smith of his rights under his action to quiet title, if any he had, might have constituted a contract consideration for the waiver, by Bradley, of his right of action against Smith for partial breach of performance; but it is not contended, and the testimony does not establish, such a waiver by Bradley, nor any intent on his part to procure dismissal of such action on the other party's belief that Bradley was releasing such claim. This is not a case where a deed called for by an executory contract was delivered and received as a full compliance with the contract. Whether acceptance of deeds without protestation would have, by operation of law, satisfied the contract of sale as to the land to be purchased, is not necessary to determine. It certainly would not have done so as to the school leases and fencing. Respondent was entitled to recoup against the mortgage debt all damages he has suffered through breach of the contract of sale.

Appellant has assigned error in the allowance of $230.98 as damages for removal of water tanks, car house and chicken house. This property was upon the premises, and constituted buildings or improvements thereon. Smith asserts he never owned them, and that they were removed from the premises by the tenant. Bradley testifies that, before signing the contract, in company with Smith, he examined the premises with reference to the improvements thereon, and Smith rep-

resented he was the owner of all these improvements then there situated. Smith's proof that he did not own them but indisputably establishes the breach of his contract to convey them. The evidence sustains this recovery.

The remaining assignment relates to damages for Smith's failure to assign school leases, and for his refusal to deliver the fence on the school land. For these items the court allowed Bradley $960 damages as "the reasonable value of the use and occupation of the premises included in the school land lease for the period of five years," and the additional sum of $152 as "the value of fencing upon said school land," with interest on both items from February 17, 1907. The contract reads: "You are also to have lease on school land on one half-section joining this land, and the fencing thereon, at price of $200 cash." Bradley deposited $200 cash with the clerk in the action for specific performance, in which he was granted specific performance without taking over the lease, and he went into possession of the farm February 17, 1907, under the decree, and subsequently withdrew his $200 deposit.

Owing to the large award for these items, the substance of all evidence thereon follows: There was $2\frac{1}{2}$ miles of fence, 4 wires high, strung on 444 large fence posts, each 5 inches in diameter and 7 feet long. Bradley offers proof that it took 60 days' work, at an average of $1.75 per day, or $105 for wages, in building it; that it contained 40 spools of wire, worth new $3 per spool, or $120. No proof of the value of the posts appears in the record. The fence was built in 1905, and must have been in good condition. Bradley's testimony is that this fencing alone was worth on that farm at least $350, and seems not to be an excessive valuation; but from this should be deducted the purchase price, $200. Bradley's actual damage for failure to receive this fencing is $150 under his testimony, which amount is found to be his damages for this item.

The damage assessable for breach of the agreement to convey the school leases is the final question. Assume Bradley's testimony as true, that he was told by Smith at the time of the sale that he had a five years' lease on the school land, and he was given to understand by Smith that the leases still had five years to run. At the end of the first

season, after judgment in the action for specific performance, Smith had repeatedly refused to assign and had informed Bradley that, "on looking it up he discovered that he had no lease whatever to the land, and it was absolutely impossible for him to furnish it;" which is the fact, and in the decree of specific performance Bradley was given the option of doing as he did in February, 1907, accepting the section purchased without requiring an assignment of the school leases; that Bradley was kept out of possession, during the season of 1906, of both the section purchased and the school land, of which Smith was in possession. From the uncontradicted testimony of the County Treasurer, the public official charged by law with the leasing of the school lands in question, it is shown that this land was not leased during the years 1906, 1907, and 1908, but was vacant, unoccupied, and unclaimed, and that anyone could have leased it at the prescribed charge of $30 per year for the half-section. Bradley was presumed to know the law which informed him of where to find the public records in his own county and at the state capital, as to the leasing of these lands. From such records he could at any time have ascertained the fact that this land was open to leasing for a nominal sum. He testifies to consulting the land department at Bismarck, and learning that this land had not been leased for a number of years subsequent to 1905. He asserts he did not learn of this until "after the litigations," but he does not show any diligence on his part to ascertain whether he could lease the land from the state or not, during the years after 1906. It is but a fair inference that he either neglected or purposely refrained from such inquiry. Exercise of reasonable business precaution would have disclosed to him that the land was lying open subject to his taking. His failure to inquire and learn these facts during this long period of time discredits his testimony when we consider the business judgment used by him, throughout these years, concerning all the other many details. The only reasonable conclusion is that, though he may not have learned to a certainty that the lands were open to leasing, he surmised that such was the fact, and purposely refrained from ascertaining the facts, not wanting to know them. This evidences an intent to mulct Smith in damages, and a studied purpose to refrain from doing anything meanwhile to lessen amount of recovery. Since Bradley had the privilege

open to him to lease this land, and thereby procure exactly what he would have obtained by an assignment of the leases, with a possible advantage of an added term of leasehold at his election, he should not be allowed compensatory damages for failure of Smith to vest in him a leasehold interest. Where injury could thus have been avoided by exercise of reasonable diligence, equity should deny relief by damages. Note to Vallentyne v. Immigration Land Co. 5 Ann. Cas. 214, citing much authority. For these reasons the $960 item allowed for damages for failure to assign leases, together with all interest allowed thereon, should be disallowed. This deduction leaves a total valid counterclaim of Bradley of $660.99 (including the items in findings not challenged on appeal), and consisting of property removed, water tanks, $80; car house $114.12; chicken house $46.86; outbuilding $28.29; repairs to barn $133.58; fencing destroyed on farm $118.14; value fencing on school land $150; or a total of $660.99, found as due Bradley under the terms of decree of specific performance on December 2, 1906, which amount, $660.99, should be credited as of December 2, 1906, upon the purchase-price mortgage, leaving due December 2, 1906, on the first note, $323. Plaintiff's mortgage debt consists of $323, with interest thereon at 8 per cent per annum from December 2, 1906, together with the total of all remaining notes, amounting to $5,990, on October 17, 1906, with 8 per cent interest from that date thereon to date of entry of judgment, amounting to a total mortgage debt on May 17, 1914, of $10,139.67, to which should be added taxes for 1906 paid by plaintiff January 8, 1909—$22.94—and 7 per cent interest thereon to date of judgment to be entered herein. To this amount of principal and interest due at entry of final judgment there should be added attorney fees on foreclosure allowable to Smith and computed pursuant to § 7176, Rev. Codes 1905 (approximately $250), for all of which, together with Smith's costs and disbursements upon district court trial and upon this appeal (including amount actually paid for printing of his abstract and brief, not exceeding the rate allowed under the rules at the time of the filing thereof, in April, 1913), the usual judgment with decree of foreclosure will be entered in favor of plaintiff and appellant and against the defendants and respondents.

BURKE, J., disqualified, not participating.