## PHINIZY *v.* GUERNSEY *et al.*

1. Where a binding contract for the sale of improved realty has been made, and the improvements are destroyed by fire before the vendor is in a position to convey the legal title and before the vendee obtains possession, the loss is that of the vendor.

2. If in such a case the property was insured, the vendor is entitled to collect the insurance money in his own right and does not hold the same in trust for the vendee.

3. Though under section 4041 of the Civil Code it might not in such a case be the right of the vendor to compel a specific performance by the vendee of the original contract, yet, under the provisions of that section, the vendee may compel specific performance, and to this end a court of equity will allow him such an abatement of the contract price as is just and reasonable in view of the changed condition of the property.

4. The rule for determining the amount of such abatement would be to ascertain if there was any difference on the day the contract became binding between the market value of the entire property and the contract price. In case there was no difference, then the purchaser would be entitled to a decree requiring the seller to convey him the property upon payment of a sum equal to the market value of the lot without the building on the day the contract was made. If at the date the contract became effectual the market value of the property was greater than the contract price, a sum representing this difference should be deducted from the market value of the lot without the building, and the balance remaining would be the amount which the plaintiff should be required to pay for a conveyance of the land. In this way the purchaser would obtain the benefit of his bargain. If the contract price exceeded the market value, the purchaser should pay, in addition to the market value of the

lot without the building, the difference between the market value of the property at the date of the contract and the contract price. In this way the vendor would be given the benefit of his bargain.

Argued June 21,—Decided July 12, 1900.

Equitable petition. Before Judge Brinson. Richmond superior court. October term, 1899.

*Joseph R. Lamar*, for plaintiff.
*Joseph B. & Bryan Cumming*, for defendants.

COBB, J. This was an action brought for the purpose of compelling the specific performance of a contract for the sale of land. According to the allegations of the petition, the defendants, who were the owners of a city lot upon which was situated a building, entered into a written agreement to sell the same to the plaintiff for the sum of $16,000, of which $5 was paid when the writing was signed and the balance was to be paid when the vendee should satisfy himself that the vendors' title to the property was good. The plaintiff had agreed to take the property, but, though it is not affirmatively stated in the petition, it is clearly inferable therefrom that he never entered into possession. The written agreement to sell the property was signed on January 28, 1899. A conveyance of the property was delayed while the plaintiff was investigating the title, and after this investigation a further delay was occasioned by the fact that the defendants could not have canceled a security deed which they had given to the property, for the reason that the holder thereof refused to cancel the same until his bond for titles was surrendered, and that paper had been lost by the defendants. Pending this delay, on June 8, 1899, the building on the bargained premises was destroyed by fire through no fault of the defendants. There were at the date of the fire in full force policies of fire-insurance for amounts aggregating the sum of $10,000. The plaintiff avers his desire to comply with the contract of sale, so far as it is possible in the changed condition of affairs to carry the same into effect. He alleges that he is willing to take the land and that the amount to be paid by him should be ascertained by the application of equitable principles. There was no agreement between the parties with reference to the ownership of the policies of insurance

prior to the actual conveyance of the property, though it was agreed that when the property was conveyed in accordance with the terms of the contract the policies of insurance should be assigned to the plaintiff. The prayers of the petition were, that the defendants be decreed to make to plaintiff a conveyance of the land under the terms set forth in the contract of sale, the court to make an abatement in the purchase-price to the extent of the value of the improvements destroyed by fire; and for general relief. By amendment prayers were added, that, in the event the court should be of the opinion that the plaintiff is not entitled to an abatement of the purchase-money by reason of the destruction of the improvements, a decree should be entered that upon payment of the purchase-money the defendants should be required to make to the plaintiff a deed to the land and turn over to him the insurance money collected. There was a demurrer to the petition, on the ground that the facts set forth did not entitle the plaintiff to the relief prayed, and that, on account of the changed condition in affairs, a specific performance of the contract was impracticable. The court sustained the demurrer and dismissed the petition, and to this ruling the plaintiff excepted.

1. "When a binding agreement is entered into to sell land, equity regards the vendor as a trustee of the legal title for the benefit of the vendee, while the latter is looked upon as a trustee of the purchase-money for the benefit of the former." Bisp. Prin. Eq. (5th ed.) § 364. This rule, however, is not applicable unless there is an ability as well as a willingness on the part of the vendor to convey, the purchaser not being considered as the owner from the date of the contract unless the vendor is prepared to convey a clear title and is not in default. 1 Warvelle, Vend. 195. In the case of *Mackey* v. *Bowles*, 98 *Ga.* 730, it was held that if, after the parties had entered into a binding executory contract to sell, the property was damaged before the vendor was in a condition to convey, the loss fell upon the vendor and not on the purchaser. The loss in that case arose out of the destruction by fire of the building situated upon the land which was the subject-matter of the sale. See also, in this connection, Kinney *v.* Hickox, 24 Neb. 167; Thompson *v.* Gould, 20 Pick. 134. Applying the principles above

stated to the present case, as the vendee had not gone into possession before the fire, and the vendors were not, prior to that occurrence, in a position where they could make to the vendee an unincumbered title to the property, they were the owners of the property at the date the fire occurred, and the loss resulting therefrom must fall upon them.   If the contract has been so far completed that the vendee is to be treated as the owner of the premises, then the loss falls upon him, as was the case in Paine v. Meller, 6 Ves. Jr. 349, where it was held that when there was a contract for the sale of houses, which on account of defects in the title could not be completed, the treaty, however, proceeding upon a proposal to waive the objections upon certain terms, and the houses were burned before the conveyance, the purchaser was bound if he accepted the title; and the fact that the vendor allowed insurance on the houses to expire on the day on which the contract was originally to have been completed, without notice to the vendee, made no difference.

2. The next question to be determined is, who was entitled to collect the insurance.   As has been seen, the loss occasioned by the fire fell upon the vendors, and it would seem that the indemnity against loss should belong to them.   This is, we believe, the rule in such cases.   If the contract of sale had been so far completed that the vendors would have held the legal title as trustees for the vendee, then they would likewise have held title to the policies in the same capacity.   But as they were the owners of the property to the extent that the loss occasioned by the fire fell upon them, they will also be treated as owners of the property so far as the right to the insurance on the building is concerned.   In Poole v. Adams, 33 L. J. N. S. 639, it was held that a purchaser of property insured, which was destroyed by fire, does not by the mere fact of purchase acquire a right to the insurance money.   It has been held in some cases that where a contract of sale is so far completed that the vendor is to be treated as the trustee of the vendee, the vendor would also hold in trust for the vendee a policy of insurance which was on the property at the time the contract was made; and that if a loss by fire occurred between the date of the contract and the time fixed for the delivery of the deed, the vendor would be compelled to account to the vendee for the insurance

money collected on the policy, as he was in equity the owner of the property at the time of the fire and the loss fell upon him.   Reed *v.* Lukens, 44 Pa. St. 200.  See also Insurance Company *v.* Updegraff, 21 Pa. St. 513 ; Williams *v.* Lilley, 67 Conn. 50 ; Grange Mill Co. *v.* Western Assurance Co., 9 N. E. (Ill.) 274.   The rule is thus stated by the Supreme Court of Ohio in Gilbert *v.* Port, 28 Ohio St. 276 (8):  "As between vendor and vendee, under a valid and subsisting contract of sale of real estate, covered by a policy of insurance, where a loss insured against occurs after the date of the contract and before conveyance, the true test for determining to whom the money recovered on the policy belongs, in the absence of stipulations governing, is to determine who was the owner and which party actually sustained the loss."   As in the present case the loss fell upon the vendors, they were entitled to collect and hold the money due by the insurance companies on the policies issued on the property.

3.  When there has been a binding agreement to sell improved real estate, and before the property is conveyed the improvements upon the property are destroyed by fire without the fault of the vendor, will a court of equity compel at the instance of the vendee a specific performance of the contract?  Section 4041 of the Civil Code declares:  "The vendor seeking specific performance must show an ability to comply substantially with his contract in every part, and as to all the property; but a want of title, or other inability as to part, will not be a good answer to the vendee seeking performance, who is willing to accept title to the part, receiving compensation for the other. If the defects in the vendor's title be trifling, or comparatively small, equity will decree at his instance granting compensation for such defects."   The section quoted is but a codification of the general rules recognized by courts of equity in reference to applications for the specific performance of contracts.   "It is settled that immaterial deficiencies will not deprive the vendor of his right to have the contract performed as against the vendee—provided that the deficiencies are such as may be compensated in money.   Under such circumstances the vendee may be compelled to take the property, and a suitable deduction will be made in the price.   But if the deficiencies are material and

important, the vendee will not be compelled to take the prop-
erty.   He is entitled to have what he bargained for; and it
would, obviously, be extremely unjust to force anything upon
him which he had not designed or contracted to buy.   If there
is a failure in that which is an inducement to the purchase, he
will not be compelled to take." Bisp. Prin. Eq. §389. In
Gould *v.* Murch, 70 Me. 288, it was held : When the owner of
land with a building thereon agrees to convey it at a future
day on payment of the purchase-money, and before payment
and conveyance the building is destroyed by fire without the
fault of either party, the loss must fall upon the vendor;
and if the building formed a material part of the value of the
premises, the vendee can not be compelled to take a deed to
the land alone and pay the purchase-money.   See also Smith
*v.* Cansler, 83 Ky. 367 ; Wells *v.* Calnan, 107 Mass. 514 ; Powell
*v.* Dayton R. Co., 12 Or. 488, s. c. 8 Pac. 544 ; Kinney *v.* Hic-
kox, 24 Neb. 167 ; Huguenin *v.* Courtenay, 21 S. C. 403.   It
may be stated as a general rule that where property which is
the subject of a contract of sale has been substantially damaged
or materially changed between the date of the contract of sale
and the time when the vendor offers to convey, the courts will
not decree a specific performance of the contract at the instance
of the vendor.   The reason for this is apparent.   The vendor
has no right to force upon the vendee something which he has
not agreed to buy.

The rule is different, however, when the application for spe-
cific performance comes from the vendee.   There is a manifest
reason for this difference.   The vendee has a right, if he sees
proper to do so, to accept less than he bargained for, and com-
pensation for the loss of that which he does not obtain.   If for
any reason the vendor can not convey to the vendee substan-
tially what the contract calls for, of course a specific perform-
ance of the contract according to its terms is impossible.   Such
obstacles to a specific performance may arise from a defect in the
title to some portion of the premises bargained for, or from the
fact that the interest of the vendor is different from that de-
scribed in the contract, or the property may be subject to liens
or incumbrances, or, if the subject of the contract is land, it
may be deficient in quantity or quality or value.   "In such a

case there are only three possible alternatives for a court of equity to pursue; either to refuse its remedy entirely; or to enforce the contract without any regard to the partial failure, compelling the purchaser to take what there is to give and to pay the full price as agreed; or, to decree a conveyance of the vendor's actual interest, and allow to the vendee a pecuniary compensation or abatement from the price, proportioned to the amount and value of the defect in title or deficiency in the subject-matter." Pomeroy, Spec. Per. Con. § 434. In the same connection the author just quoted says that the first alternative might often contravene the wishes and interests of both parties, and can not, therefore, be taken as the universal rule; that the second one would be extremely unjust and inequitable, though it is occasionally resorted to when the vendee is not in a situation which entitles him to favorable consideration; that the third is based upon equitable principles, it endeavors to preserve the rights of both parties, and is therefore constantly resorted to and applied by courts of equity in aid of a vendee, and sometimes, although under more and greater restrictions, in aid of the vendor; but that there are circumstances under which even a vendee is not allowed to avail himself of the doctrine.    In section 435 the same author says : "If the purchaser is willing and desirous to take the partial interest which the vendor can convey, and especially if he is the party calling upon the court for relief, there can be but little difficulty in granting him the remedy of performance, with a reasonable compensation for the defects."    Mr. Bispham in his work on the Principles of Equity thus states the rule : "It may sometimes happen that defects exist which render the property less valuable than the contract price ; but which, nevertheless, may not be of so vital a character as to induce the purchaser entirely to throw up his bargain.    In such a case the equity of specific performance with compensation comes into play for the benefit of the vendee.    He is entitled to have the agreement carried out, and yet at the same time to have an abatement or allowance made by reason of the defects." § 390.    See also Fry, Spec. Per. Con. (3d ed.) §§ 1222, 1223 ; 2 Story's Eq. Jur. (13th ed.) § 779; 2 Suth. Dam. (2d ed.) § 589, p. 1311 ; 2 Beach, Mod. Eq.

Jur. §§ 624, 627; 22 Am. & Eng. Enc. L. (1st ed.) 942, 943; Harbers *v.* Gadsden, 6 Rich. Eq. 284, s. c. 62 Am. Dec. 390.

The text-books and cases cited show that the doctrine of specific performance with compensation for defects, when the vendor can not convey exactly what his contract calls for, is thoroughly established, and it is in rare cases where the court will refuse such relief at the instance of the vendee. It is true that in nearly if not all of the cases the inability on the part of the vendor to convey what the contract called for arose from some fact which was in existence at the time the contract of sale was made, such as defects in the title to a part of the prem- ises, deficiency in quantity or quality or value of the property which was the subject-matter of the contract, and the like. There does not seem, however, to be any good reason why the principle should not be applicable where the inability of the vendor to convey a part of that which his contract stipulated for arose, subsequently to the making of the contract, out of some transaction in which the vendee was not involved; and the fact that the vendor was himself without fault would not seem to be an obstacle which would prevent the application of the rule. Requiring a vendor to pay damages to his vendee for a failure to convey property which, subsequently to the execution of the contract of sale, was destroyed by fire, is no greater hardship than requiring a vendor to pay damages on account of his hav- ing ignorantly, though honestly, and after the exercise of all possible diligence, bargained away something which he did not own but which he believed was his own. That he would be required to pay damages in the latter case no one will doubt; that he should be in the former case ought not, it would seem, to be questioned upon principle. In Lombard *v.* Chicago Sinai Congregation, 64 Ill. 477, which was a case of an executory contract for the sale of real estate, where the vendor was to fur- nish an abstract of title, and if not satisfactory he was to have the option of perfecting the title, or annulling the contract and returning the money paid, and the abstract failed to show title, and the vendor failed to exercise his option, after notice to do so, until after buildings thereon were destroyed by fire, the vendor still remaining in possession, it was held, on a bill by the vendee for the specific performance of the contract as to the

land and compensation for the buildings and property destroyed, that the contract was not so complete as to make the land the property of the vendee, so as to throw upon him the loss of the buildings, and that, upon specific performance being ordered, the vendee was entitled to compensation for the loss, to be deducted from the purchase-money; and that the vendor was entitled to interest on the unpaid purchase-money only from the time a good title to the property was shown, the vendor being entitled to the rents and profits up to such time. The case just referred to is the only one which has been called to our attention which is at all similar to the present case. Upon principle, however, we have no hesitancy in holding that the vendee in a case like the present is entitled to have a conveyance made to him of the land and compensation for the loss of the building, provided the loss thus sustained is capable of computation. If the plaintiff sustains his allegations, a decree should be entered, that the defendants convey to him the land which was the subject-matter of the contract, and that the purchase-price be abated in such an amount as is just and reasonable in view of the changed condition of the property.

4. If the difference in value between the interest contracted for and the interest that can be conveyed is incapable of computation, of course the court will not undertake to enter a decree for specific performance with compensation for defects. But, as has been said, in the light of many adjudicated cases, "it is conceived that the court will seldom now consider a difficulty of this kind insuperable." Fry, Spec. Per. Con. § 1240. We do not think the present case falls within the rule above referred to, as it seems to us that the amount which should be allowed to the plaintiff as compensation for the loss sustained by him in not obtaining a conveyance of the land with the building on it can be made the subject of exact computation. Let it be kept in mind that the plaintiff is entitled to be placed, so far as property and money will place him, in exactly the same position that he was in on the day that the contract of sale was entered into. If on that day the property was worth more than he agreed to pay for it, he is entitled to the profit on his bargain. If, on the other hand, the property was worth less than he agreed to pay for it, he must suffer the loss. Let

it be ascertained what was the market value of the property with the building on it on the day that the contract was entered into.　Let it also be ascertained what was the market value of the lot, without regard to the building, on that day.　If the market value of the improved lot was more than the contract price, the difference between these two sums would be the profit that the plaintiff would have realized on his bargain.　Deduct the amount of profit from the market value of the lot alone, and the sum remaining will be the amount which the plaintiff should be required to pay.　If the market value of the property and the contract price are the same, then the plaintiff should be required to pay a sum which would equal the market value of the lot without the building.　If the market value of the whole property was less than the contract price, then the plaintiff should be required to pay the market value of the lot without the building, and in addition to this the difference between the market value of the lot and building and the contract price, provided that in no event should the plaintiff be required to pay more than $16,000.　While we find no rule for computing the amount of compensation in such cases, we think the above rules are in accordance with equitable principles and are deducible from the general rules which seem to have been recognized by the courts and text-writers.　See, in this connection, *Smith* v. *Kirkpatrick*, 79 *Ga.* 410; 2 Suth. Dam. (2d ed.) 1311, 1312; 2 Beach, Mod. Eq. Jur. § 629; Wilcoxon v. Calloway, 67 N. C. 463; Fry, Spec. Per. Con. § 1239.　The prayers of the petition were broad enough to authorize relief along the lines above indicated.　The court erred in sustaining the demurrer, and the case should be tried in the light of what is here laid down.　　　*Judgment reversed.　All the Justices concurring.*