## CIRCUIT COURT OF FREDERICK COUNTY

Earl M. Nicholson et ux.

v.

Jerry J. LaFollette et ux.

June 23, 1989

Case No. (Law) 88-47

By JUDGE ROBERT K. WOLTZ

This is a suit for declaratory judgment brought by the vendor of improved real estate against the purchase to determine the rights of the parties under their contract of sale. The issues are: 1. construction of the contract with respect to the purchase price and the payment of interest on the balance due; 2. avoidance of the contract by the purchaser under the provisions of Code § 11-2.3; and 3. entitlement as between vendor and purchaser to proceeds of an insurance policy maintained by the vendor resulting from a fire casualty to the property after the contract was formed but before delivery of deed. The issues will be decided seriatim.

December 30, 1986, the plaintiff-vendor and the defendant-purchaser entered into a contract of sale for residential real estate on which there were several buildings. The contract was prepared by an attorney at the

request of the vendor and contained a number of blanks to be filled in. The attorney was not present at the time of signing the contract, and the parties filled in the blanks themselves. They inserted "none" and "N/A" in certain blanks which based on their testimony at trial should have been filled in with dollar amounts.

The contract as signed provided for a purchase price of $47,000.00 to be represented by a promissory note of the purchaser payable in $500.00 monthly installments commencing January 15, 1987, until paid in full. The contract is entirely silent as to interest on the deferred purchase money. The vendor agreed to deliver a sufficient deed for the property free of encumbrances upon full payment of purchase price. Though the contract was in form capable of being admitted to record, it did not include the specific language required by Code § 11-2.3[1].

At the execution of the contract by the parties, the question of insurance coverage was broached. The vendor has insurance in effect on the property, and the purchaser was meeting difficulty in promptly acquiring insurance for his contemplated purchase. The vendor agreed to continue his insurance at least until the purchaser obtained insurance. A few days after the contract was signed and before the first monthly installment of purchase money was due and before purchaser had obtained insurance, a fire occurred in one of the buildings. The vendor received $10,000.00 under his insurance policy as a result of this casualty.

The vendor testified that during prior negotiations, he had discussed interest on the deferred purchase money with the purchaser, mentioning the figure of nine per cent and supplying him or his wife with an amortization schedule. Purchaser denies that he had any intention of paying interest and that the vendor's wife did not explain any amortization schedule to him. Purchaser's wife stated

---

[1] The pertinent part of the required language is as follows: "This contract must be recorded in the general index of the clerk's office in the circuit court of . . . (city or county in which land is located) in order to protect the buyer from claims of subsequent purchasers of, or other prson obtaining an interest in, this real estate, or claims of judgment creditors, if any, of the seller."

vendor's wife did show her an amortization schedule, but she did not understand it. Purchaser and wife are of limited education and apparently inexperienced in business matters. The vendor and his wife were actively engaged in business and had previous experience in real estate transactions.

Vendor alleges that the total purchase price was $55,000.00, that the purchaser paid $8,000.00 down (though the incorrect filling up of blanks in the contract do not reflect this), and that the balance of the purchase price was $47,000.00. Purchaser plead that the purchase price was $47,000.00 and that the $8,000.00 payment is a credit against it.

## I. *Construction of Contract*

The contract clearly states that the sale price is $47,000.00 and contains no statement as to any down payment. The contract being clear and unambiguous and no fraud or mistake being alleged, that sum for the purposes of this case is the price of the property without credit against it for any down payment. The evidence shows that the sale price discussed was $55,000.00 and the purchaser paid $8,000.00 which reduced the purchase price at the time of the written contract to $47,000.00 as set forth in it. The purchaser, contrary to his pleading, so testified.

As mentioned the contract does not provide for interest on the deferred purchase money. It states that the purchasers may, subject to compliance with the term of the agreement, have and retain use of the property, which the court construed as giving them the right to immediate possession. There is also a forfeiture clause if the purchaser fails to make payment of installments and taxes or fails to comply with the terms of the agreement. Then the vendor at his option may declare the entire balance of the sale price "together with any interest thereon remaining unpaid" immediately due and payable or may re-enter and take possession retaining payments made as liquidated damages.

Under certain factual circumstances even where no interest is provided for in the contract vendors have a right to charge interest on deferred purchase money. For discussion of such instances see *Barnett v. Cloyd*, 125 Va. 546 (1919). That rule has no application where

the contract fixes the date of taking possession by the purchaser and the dates for payment of purchase money but is silent as to interest on such payments, and the vendee does not take possession prior to the date allowed nor fail to make his payment on the dates prescribed. As stated in *Barnett* at page 554:

> In such case the rule is equally well settled in equity as at law that no obligation of the vendee to pay interest on the deferred payments of purchase money will be implied, nor does such liability for interest arise as damages recoverable by the vendor, except from the date or dates on which the same become due and payable in accordance with the terms of the obligation.

The contract making no express provisions for payment of interest and the conditions stated above applying, no interest charges will be implied and the purchaser is not liable for interest on the deferred purchase money payments. This rule, however, would not absolve him from interest on any payments in default.

II. *Purchaser's Right to Avoid Contract under Section 11-2.3*

The provisions of § 11-2.3 are obviously for the protection of the unwary, unsophisticated, or legally uninformed purchaser under contracts of the type involved here. Under the provisions of this statute, he must have a contract in recordable form, and the contract must warn him that he is required to record it to protect himself from the claims of subsequent purchases from or creditors of the vendor. The statute affords him the further protection of an option on his part to declare the contract void if the statutory requirements are not met.

The evidence in the case does not disclose whether the purchaser recorded his contract. If he has not, then in this case he may timely declare the contract void. On the other hand, if he has recorded the contract before third party claims may have intervened, then he should not be allowed to take advantage of the statute. He received a contract capable of being recorded in the land records

as required by the statute. If he had proceeded to record it, then even though the contract did not contain the words of warning required by the statute, it would be an empty and unjust thing to allow him to void the contract when despite the absence of that language, he has proceeded to do the very act the statutory warning tells him he should do. If he has protected himself by recordation, the absence of the language in the contract is of no moment. To say otherwise would unfairly exalt form over substance.

### III. *Entitlement to Proceeds of Insurance*

The contract here was silent on the matter of responsibility for insurance coverage. It was also silent as to which party to the contract should bear the risk of loss due to destruction of or damage to the res in the interim between formation of the contract and delivery of a deed pursuant to it. It is agreed that both parties had an insurable interest in the property. Inference from the evidence is that the purchaser was in possession before the casualty and the vendor was in a position to deliver marketable title. The first step is to decide on whom in these circumstances the loss falls.

The general rule followed in most American jurisdictions is that during the interim period, the risk of loss falls on the purchaser. Annot., 27 A.L.R.2d 444. The source of this doctrine is the case of *Paine v. Meller*, 6 Ves. Jr. 349, 31 Eng. Rep. 1088 (1801). This is the rule in Virginia as stated, though it may be dictum, in *Reynolds v. Necessary*, 88 Va. 125 (1891):

> The purchaser is regarded as the real beneficial owner of the estate and the vendor the mere trustee of the legal title for his benefit.
> Whatever loss may fall on the estate is the loss of the purchaser. Whatever advantage may accrue to it is his gain. This doctrine is too firmly established ever to be changed by anything short of legislative enactment.

*See also Continental Insurance Co. v. Brown*, 630 F. Supp. 302 (W.D. Va. 1986), holding that when no written agreement reflects intention of the parties, the purchaser bears

the risk of loss between the making of the contract and delivery of the deed. There are exceptions to the rule, not present here, where the loss falls on the vendor, as when it occurs before he is able to convey clear title. *Christian v. Cabell*, 63 Va. (22 Gratt.) 82 (1872).[2]

The risk of loss being on the purchaser, the issue then becomes who as between vendor and purchaser is entitled to the proceeds of the casualty insurance paid under a policy maintained by the vendor? There is no appellate case in Virginia deciding the appropriate disposition of the proceeds of casualty insurance received on a policy in the name of and paid for by a vendor covering improvements on real estate subject to a contract of sale. There is authority that where the contract is silent on insurance, a vendor who maintains insurance on the property is entitled to the proceeds resulting from a casualty loss respecting the property despite the fact that the loss falls on the purchaser, Annot., 64 A.L.R. 2d 1232, as was announced in *Rayner v. Preston*, L.R. 18 Ch. Div. (C.A. 1881), until the rule was changed by statute. The rationale was that the contract of insurance was personal to the vendor and did not run with the land. *Brownell v. Board of Education*, 146 N.E. 630 (N.Y. 1925), appears to follow this rule, but a reading of the case shows that under the terms of the contract the purchaser had certain protective rights that might leave him whole.

Regardless of interpretation of the last case and such other cases as give entitlement to insurance proceeds received by virtue of the vendor's insurance policy to the vendor, more jurisdictions have adopted the doctrine that in such circumstances the vendor holds the proceeds received on his insurance policy as a trust fund for the

---

[2] Some jurisdictions put the risk of loss on the vendor, implying a contract provision that the thing sold will continue in existence until the sale is consummated and analogizing to a sale of personalty. This Massachusetts doctrine provides that destruction terminates the contract and that partial destruction gives the purchaser an election to terminate the contract. Some cases base decision on who was in possession of the property, and this is an important factor under the Uniform Vendor's and Purchaser's Risk Act in force in several jurisdictions. Annot., 27 A.L.R. 2d 444, which also discusses other results on varying theories.

benefit of the purchaser, such proceeds to be credited against the purchase price of the property damaged. Annot., 64 A.L.R. 2d (1959). Not only is the weight of authority to this effect, but the Court is satisfied that this is the better doctrine for the reasons following.

The maintenance by the vendor of casualty insurance on property which he has obligated himself by contract to sell maintains that insurance for his own protection. As noted above in *Reynolds*, he is trustee of legal title for the purchaser as beneficial owner. His primary interest in the contract is to receive the only thing he is entitled to, namely, the agreed purchase price in full. His investment of insurance premiums is not a gamble to achieve windfall profit over and above what he is legally entitled to receive from the sale of the realty. Especially such windfall should not be at the expense of the purchaser by way of diminution in value of the res which the latter is obligated to pay for in full. Even a public policy consideration is involved: the law should not place a stumbling block of temptation in the way of the unscrupulous or morally weak vendor to reap financial reward by means of his own arson.

The seller cites a number of cases holding that the insuring vendor is entitled to keep as his own the proceeds paid to him upon the event of a casualty. These cases, however, either follow the principle which this Court has rejected, *e.g, Brownell v. Board of Education*, cited above, or find that under the particular circumstances involved, the risk of loss fell upon the vendor on which basis he was entitled to retain the proceeds of his insurance recovery, *e.g., Phinizy v. Guerney*, 36 S.E. 796 (Ga. 1900) (vendor was not yet in a position to convey marketable title, and purchaser was not in possession). The vendor also cites in support of his position *Thompson v. Gearheart*, 137 Va. 427 (1923); *Clements v. Clements*, 167 Va. 223 (1936); and *Lynch v. Johnson*, 196 Va. 516 (1954).

These three cases are all distinguishable from the present case in that they involved life tenant-remaindermen situations. *Lynch* concerned the right of a judgment creditor to garnish fire insurance proceeds of a life tenant where the policy insured the joint interests of two life tenants and remaindermen. The holding was that the proceeds were indivisible and the garnishment must fail, and the case

has no application to this one. *Thompson*, holding that both life tenant and remainderman have insurable interests, and *Clements* both stand for the proposition that the proceeds of fire insurance under a policy in the name of the life tenant only belong to the life tenant alone free of any claim of the remainderman.

The analogy between life tenant-remainderman instances and those of vendor-purchaser on analysis breaks down. In the former situation a present and a future estate are involved and generally both are legal estates. In the latter situation, two concurrently existing estates are involved, one legal and one equitable. Second, while a life tenant has certain duties legally imposed on him, such as payment of real estate taxes and liability for waste, he is only in the loosest and most imprecise usage of terminology a trustee for the remainderman. These duties are legally not equitably imposed on the life tenant. But with vendor and purchaser, the former holds legal title in trust for the latter, These distinctions in the premises of the two situations seem sufficient to foreclose application of the rule in life tenant-remainderman cases to those of vendor-purchaser.

Note should be made that the *Thompson* case cited a Massachusetts case in supporting its decision and quoted that case at page 431 that as between life tenant and remainderman, "neither has any claim upon the proceeds of the other's policy, anymore than in the case of mortgagor and mortgagee, or lessor and lessee, or vendor and vendee." From the inclusion of that quote in *Thompson*, which was not necessary to its opinion, this Court does not take it that Virginia rejects the doctrine generally adhered to "that the proceeds of the vendor's insurance policies, even though the purchaser did not contribute to their maintenance, constitute a trust fund for the benefit of the purchaser to be credited on the purchase price of the destroyed property, the theory being that the vendor is a trustee of the property for the purchaser." 77 Am. Jur. 2d, *Vendor and Purchaser* § 371.

On this third and final point at issue, the declaration of the Court is, assuming there is no avoidance of the contract of sale by the purchaser under § 11-2.3, the purchaser in a suit in equity may have imposed a constructive trust for his benefit on the insurance proceeds

received by the vendor, less the amount of any policy premium paid by the vendor, for application as a credit against the purchase price, as of the date of the casualty, under the contract of sale, such constructive trust and application of insurance proceeds not to exceed the amount of purchase price under the sale contract remaining unpaid as of the date of the casualty, any excess remaining after payment of purchase price to belong to the vendor free and clear of any trust.