A91A1343. SIMMONS et al. v. KRALL et al.
(412 SE2d 559)

SOGNIER, Chief Judge.

The City of Atlanta condemned certain property in Fulton County, and when the condemnees appealed the special master's valuation, a jury determined that the value of the property was $3.5 million, which was deposited in the registry of the trial court. Because the property was the subject of an executory contract of sale entered into before the condemnation, the trial court permitted the sellers, Mary Ann Thomas Simmons, Joseph Simmons, and Martha Miller, to withdraw from the registry $1.3 million, the amount of their contract sale price, and proportionate interest. The trial court then ordered that a second jury trial be held to determine the allocation of the remainder of the proceeds, $2.2 million and proportionate interest, among the sellers, the purchaser under that contract, John Krall, and the purchaser under a second executory contract of sale from Krall to Lacy Curry. The second jury trial resulted in an award in favor of Krall and Curry, and the Simmonses and Miller bring this appeal from the trial court's denial of their motion for judgment n.o.v. or, alternatively, for a new trial.

The evidence adduced at trial showed that the property in question had been used by the city as a landfill pursuant to a lease which expired on July 31, 1988. Paragraph six of that lease provided that "[w]hen the City of Atlanta turns said property back over to the owners, it will prepare the land used for landfill purposes and sow grass or other appropriate cover on the property so as to prevent unnecessary erosion." Appellants, who had acquired the property by inheritance during the term of the lease, did not wish to hold the property, and prior to the expiration of the lease they began efforts to sell it through a real estate broker. On August 10, 1988 appellants and Krall entered into a contract for the sale of the property (the "Krall contract") for $1.3 million, "[a]ll cash at time of closing." Krall paid $1,000 earnest money, which was to be applied to the purchase price at closing. The contract provided, in special stipulation four, that "[t]his sale shall be closed on or before 30 days after the City of Atlanta has turned possession back to Seller in accordance with paragraph 6 of the [lease] or by _____, whichever comes first." The blank was not filled in.

On September 29, 1988, although he had not yet closed on his contract with appellants, Krall entered into a contract agreeing to sell the property in issue to Lacy Curry (the "Curry contract") for $1.76

million, "[all] cash at time of closing," with a $100 earnest money payment to be applied to the purchase price at closing. The special stipulations in the Curry contract were identical to those in the Krall contract except that the blank in special stipulation four was filled in with the term "15th day of December." Neither sale ever closed. On October 5, 1988, the city instituted condemnation proceedings against the property.

The evidence was conflicting on the issue of whether the city had complied with its obligation under paragraph six of the lease to restore the property. Appellants presented the testimony of city employees that the work had been done, while appellees adduced evidence to controvert this testimony.

1. Appellants contend the trial court erred by denying their motion for judgment n.o.v. because appellees were not entitled to the proceeds of condemnation. The jury would have been authorized to conclude either that the city had complied with paragraph six of the lease, which was a condition precedent to Krall's duty to close, see generally *Daniel v. Dalton News Co.*, 48 Ga. App. 772, 773 (1) (b) (173 SE 727) (1934), or that it had not. If the city had complied with paragraph six of its lease by July 31, 1988, Krall's contract would have expired by its own terms 30 days thereafter unless he had closed the contract by August 30, 1988, which he admitted he did not do, and the contract would have ceased to exist. Under these circumstances, appellants would have been entitled to recover the proceeds of the condemnation. If, on the other hand, the city had not yet complied with paragraph six of the lease at the time of the condemnation, the question arises whether the existence of the unfulfilled condition precedent to Krall's duty to close the contract entitled appellants to the proceeds of the condemnation.

Under the doctrine of equitable conversion, generally the risk of loss and the consequent entitlement to benefit is on the buyer. *Bleckley v. Langston*, 112 Ga. App. 63, 64-65 (143 SE2d 671) (1965). " 'The rule is based on the principle that the contract gives to the purchaser in fact and substance the real ownership of the land, the vendor retaining in his own right possession, rents and profits for the brief interval before performance, and the legal title as security for the purchase money.' [Cit.] As a result of the rule, the vendee is entitled to the proceeds arising from condemnation proceedings. [Cit.]" Id. Under the equitable conversion theory this is reasonable, as we assume that any contract for the sale of land is made in contemplation that the taking of land in condemnation proceedings may be possible and, if the vendee is the equitable owner, he is entitled to just

compensation. Despite frequent criticism,[1] see, e.g., id. at 65, the doctrine of equitable conversion remains the majority rule throughout the country, and Georgia adheres to that rule.

Appellants argue that the rule is unsound and should be changed. We need not address this argument, however, because the doctrine has been applied in Georgia subject to certain exceptions, and we find that the circumstances sub judice fall under such an exception. The Supreme Court has held that the rule is applicable only "[i]f the contract has been so far completed that the vendee is to be treated as the owner of the premises," *Phinizy v. Guernsey*, 111 Ga. 346, 349 (1) (36 SE 796) (1900), and "is not applicable unless there is an ability as well as a willingness on the part of the vendor to convey, the purchaser not being considered as the owner from the date of the contract unless the vendor is prepared to convey a clear title and is not in default. [Cits.]" Id. at 348 (1). Other Georgia cases have declined to apply the rule in the absence of a "perfect equity." See, e.g., *Cloud v. Jacksonville Nat. Bank*, 239 Ga. 353, 354-355 (236 SE2d 587) (1977).

Where a condition precedent has not been fulfilled, the purchaser is not required to go forward with the sale, see OCGA § 13-3-4, and thus the contract is not "so far completed that the vendee is to be treated as the owner" within the meaning of *Phinizy*, supra. See *Moore v. Buiso*, 235 Ga. 730, 731-732 (1) (221 SE2d 414) (1975) (reaffirming principle in *Phinizy*, but finding evidence that condition precedent in contract had been met). An unfulfilled condition precedent may also affect the seller's ability to convey the title as called for by the contract. See *Phillips v. Bacon*, 245 Ga. 814, 816 (267 SE2d 249) (1980). These cases demonstrate that the presence of an unfulfilled condition precedent in the sales contract provides an exception to the application of the doctrine of equitable conversion so as to prevent the risk of loss —as well as the chance of benefit — from falling on the vendee. See generally Annot., 85 ALR4th 233, § 4.

Appellees had no duty to go forward with the contract because of the unfulfilled condition precedent, and the contract was not "so far completed that [appellees are] to be treated as the owner." *Phinizy*, supra. Therefore, even if the jury believed that the city had not complied with its obligations under paragraph six of its lease, appellants were nevertheless entitled to the condemnation proceeds. Accordingly, as there was no evidence from which the jury would have been

---

[1] Professor Samuel Williston, in his treatise on contracts, has stated that the rule is an anachronism, deriving from its origin in the British courts of Chancery at the time when the promises in all bilateral contracts were held to be independent of each other. Because a vendor could not refuse to convey land as contracted despite the purchaser's failure to pay, he thus came much nearer to justifying his description as a trustee for the vendee. 7 Williston, Law of Contracts, § 933 (3rd. ed. 1963).

authorized to conclude that appellees were entitled to the proceeds of condemnation, the trial court erred by failing to grant appellants' motion for judgment n.o.v. See generally *Turner Outdoor Advertising, Ltd. v. Werco, Inc.*, 194 Ga. App. 14, 15 (1) (389 SE2d 778) (1989).

2. Our holding in Division 1 renders it unnecessary that we consider appellants' remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Andrews, J., concur.*

ON MOTION FOR RECONSIDERATION.

In their motion for reconsideration, appellees contend that the grounds upon which we reversed the judgment below and found that the trial court should have entered judgment for appellants n.o.v. were not included in appellants' motion for a directed verdict, and thus we have overlooked the well-established principle that an appellate court may not consider an appeal from the denial of a motion for j.n.o.v. unless the grounds therefor were previously raised in a motion for directed verdict. *Famiglietti v. Brevard Medical Investors, Ltd.*, 197 Ga. App. 164, 166-167 (2) (397 SE2d 720) (1990).

We have carefully considered this contention and reviewed the motion for directed verdict, and find that the grounds for reversal were clearly encompassed in that motion, even as paraphrased by appellees in their motion for reconsideration.

*Motion for reconsideration denied.*

DECIDED OCTOBER 31, 1991 —
RECONSIDERATION DENIED NOVEMBER 20, 1991 —

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., John W. Harbin*, for appellants.

*King, Taylor & Stovall, James F. Stovall III*, for Krall.

*Paul, Hastings, Janofsky & Walker, John G. Parker, Kathy R. Bess*, for Curry.

*Elizabeth F. Allen*, for City of Atlanta.