A01A0406. FIVE FORKS, LLC v. DEPARTMENT OF TRANSPORTATION.
(550 SE2d 715)

RUFFIN, Judge.

Five Forks, LLC ("Five Forks") held an option to purchase a parcel of land. Over two years after the option expired, the Georgia Department of Transportation ("DOT") filed a petition to condemn the property. In the condemnation proceedings, Five Forks asserted that, based on the purchase option, it had a compensable interest in the property. Finding that the option had expired more than two years before the taking, the trial court granted DOT's motion for summary judgment against Five Forks. Five Forks appeals, and for reasons that follow, we affirm.

Summary judgment is appropriate where the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]

---

[1] OCGA § 9-11-56 (c).

On appeal, we review a trial court's grant of summary judgment de novo.[2]

The relevant facts in this case are undisputed. Five Forks is a commercial real estate development company owned by William Gryboski and Daniel Howe. On October 8, 1996, Five Forks paid $1,000 for a 90-day option to purchase 1.51 acres of land (the "property") located at an intersection in Rome, Georgia, from Echota Realty Company ("Echota") for $375,000. Five Forks and Echota subsequently agreed to extend the option until February 28, 1997.[3]

Five Forks intended to build a drug store on the property and submitted a proposal to Eckerd Drugs. Because Five Forks needed permission from DOT for a driveway permit for improved access to the property, on December 11, 1996, a company representative contacted DOT's district access management engineer, Jerry Hackney. Hackney looked into the matter, and at some point prior to December 17, 1996, he informed Five Forks that DOT had a road widening project planned for the intersection where the property was located and that he would therefore need to send the permit request to Atlanta for comments.

On December 20, 1996, Eckerd Drugs accepted Five Forks' proposal to develop a drug store on the property. The next day, Five Forks initiated a four- to eight-week process of preconstruction planning. According to Gryboski, during this time the company had plans drawn, obtained soil and environmental reports and loan approvals, and negotiated a lease with Eckerd Drugs.

Meanwhile, Hackney obtained preliminary plans for the DOT road widening project. After reviewing the plans, Hackney contacted Five Forks and notified the company that the DOT project "was going to impact the property tremendously, since [one of the roads] was going to [be] . . . relocated through the middle of the property." Based on this information, Hackney informed Five Forks that DOT could not issue the permit but would meet with Five Forks and other interested parties on January 9, 1997, to discuss the matter.

At the meeting, Hackney reiterated that, because the road widening project was still in the planning stages, DOT could not issue the permit. According to Howe, there was so much uncertainty surrounding the road project that DOT could not tell him "where exactly the road was going, when it was going to . . . happen, [or] whether it was ever going to happen." In fact, Howe testified in his deposition that DOT informed him that "they didn't even have funding yet," and DOT's district access management supervisor con-

---

[2] See *Moore v. ECI Mgmt.*, 246 Ga. App. 601 (542 SE2d 115) (2000).

[3] The parties agreed to two extensions, the first one expiring on January 15, 1997, and the second one expiring on February 28, 1997.

firmed in his deposition that as of the meeting date, "funds were not in place." Due to the uncertainty surrounding the project and Five Forks' desire to move forward, Hackney told the developer that it could submit plans to DOT, but that "nothing [may come] of it."

Shortly thereafter, Five Forks submitted its plans to DOT and requested "preliminary approval on the . . . driveway location." In a letter dated January 15, 1997, DOT responded to the request stating that the driveway location was acceptable, that certain modifications needed to be made, that additional plans needed to be submitted, and that the "location and design of [the] drive may be affected by the future reconstruction of [the intersection]." The letter further stated that "[a] commercial driveway permit can only be issued if application [sic] with plans are accompanied by a building permit or letter granting permission to build from the City of Rome." Finally, the letter provided that "[t]his agreement is for 6 months from the date of this letter." The following day, Five Forks notified DOT that it would comply with the driveway modifications required by the letter.

Approximately three weeks later, on February 10, 1997, DOT wrote Howe, informing him that DOT had finalized plans for the road widening project and that the department thus would not be able to issue the driveway permit. On February 28, 1997, Five Forks' option to purchase the property expired, and Echota decided not to grant any further extensions. On June 15, 1999, DOT petitioned to condemn the property and paid the estimated compensation for the taking into the court's registry.

Based on these facts, the trial court properly granted summary judgment to DOT. It is well established that "losses occurring to property before the actual date of taking are not compensable in direct condemnation actions."[4] The date of taking in a direct, formal condemnation case is "the date on which compensation is tendered or paid to the landowner."[5] In this direct condemnation case, the date of taking was June 15, 1999, the date DOT deposited the estimated

---

[4] *Josh Cabaret, Inc. v. Dept. of Transp.*, 256 Ga. 749 (3) (353 SE2d 346) (1987) (losses suffered by business owner that abandoned leasehold interest in property based on anticipated condemnation were not compensable because they "did not result from an exercise of eminent domain"). See also *Thompson v. Dept. of Transp.*, 209 Ga. App. 353 (1) (433 SE2d 623) (1993) (withdrawn offer to purchase property based on anticipated condemnation did not give rise to compensable loss); *Collins v. MARTA*, 163 Ga. App. 168, 170 (6) (291 SE2d 742) (1982) (landowner who was unable to rent houses on his property due to anticipated condemnation did not suffer compensable loss).

[5] *Shealy v. Unified Govt. of Athens-Clarke County*, 244 Ga. App. 853, 855 (537 SE2d 105) (2000). Compare *Hulsey v. Dept. of Transp.*, 230 Ga. App. 763, 765-766 (2) (498 SE2d 122) (1998) (ruling that in inverse condemnation case, where property is allegedly taken for roads and "continuous governmental activity" in road construction caused siltation of owner's lake, date of taking was time when " 'damaging activity [had] reached a level which substantially interfere[d] with the owner's use and enjoyment of his property' ").

compensation into the court's registry.[6] It is undisputed that Five Forks' option to purchase the property expired more than two years before DOT condemned the property.[7] Accordingly, we find no merit in Five Forks' argument that it was the equitable owner of an interest in the land at the time of condemnation.[8] Similarly, all of Five Forks' alleged business losses occurred more than two years prior to the date DOT filed its petition. Even if Five Forks suffered a previous taking by inverse condemnation by the DOT, it cannot recover damages for such taking in this direct condemnation action because they were " 'not a consequence of the instant taking.' "[9] Instead, it is undisputed that all the damages alleged by Five Forks were caused by the anticipation that the property would be condemned at some point in the future.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 21, 2001.

*Peterson & Harris, Jim N. Peterson, Jr., Philip L. Young*, for appellant.

*Thurbert E. Baker, Attorney General, R. O. Lerer, Senior Assistant Attorney General, Shaw, Maddox, Graham, Monk & Boling, Daniel M. Roper*, for appellee.

---

[6] See OCGA § 32-3-7.

[7] Cf. *DeKalb County v. Fulton Nat. Bank of Atlanta*, 156 Ga. App. 253 (1) (274 SE2d 649) (1980) (lease and purchase option in force at time of taking).

[8] See *Simmons v. Krall*, 201 Ga. App. 893, 894 (1) (412 SE2d 559) (1991) (recognizing that purchaser of property *under contract at time of taking* is equitable owner and entitled to proceeds arising from condemnation proceedings).

[9] *Shealy*, supra.